813 F.2d 105
 55 USLW 2515
 UNITED STATES of America, Plaintiff-Appellant,
v.
Howard "Ace" UNDERHILL, Daniel Rokitka, Eddie Osborne, Joe
Osborne and Walter Person, Defendants-Appellees.
UNITED STATES of America, Plaintiff-Appellant,
v.
Pat TATA and Tony Rayburn, Defendants-Appellees.
 Nos. 86-5409, 86-5412.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 11, 1986.
Decided March 6, 1987.
 
 W. Hickman Ewing, Jr. (argued), U.S. Atty., Memphis, Tenn., Frederick H. Godwin, for plaintiff-appellant.
 Albert Boyd, Robert M. Friedman, Charles Perry Roney, Butler & Associates, Memphis, Tenn., Robert Stephen Butler, for defendants-appellees in No. 86-5409.
 Frank Holloman, James D. Causey (argued), Memphis, Tenn., for defendants-appellees in No. 86-5412.
 Before LIVELY, Chief Judge, and KEITH and MERRITT, Circuit Judges.
 LIVELY, Chief Judge.
 
 
 1
 The question for decision is whether the participants in an illegal gambling business, some of whom caused their telephone conversations to be intercepted and recorded, are entitled to have these recordings suppressed during a prosecution for violation of federal anti-gambling statutes. The answer depends on our construction of various provisions of the Federal Wiretap Act, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. Sec. 2510, et seq. (1982) (Title III or the Act).
 
 
 2
 The exclusionary provision of Title III is contained in 18 U.S.C. Sec. 2515:
 
 
 3
 Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.
 
 
 4
 Section 2515 is not self-executing. The Act provides that any "aggrieved person" may move to suppress the contents of an intercepted communication on the ground, inter alia, that "the communication was unlawfuly intercepted...." 18 U.S.C. Sec. 2518(10)(a)(i). An aggrieved person is one "who was a party to any intercepted wire or oral communication or a person against whom the interception was directed." 18 U.S.C. Sec. 2510(11).
 
 
 5
 The defendants in this criminal prosecution made timely motions to suppress tapes in the possession of the government on the ground that they were recordings of telephone conversations that had been illegally intercepted. Following an evidentiary hearing the district court concluded that Sec. 2515 required suppression and granted the motions. The United States has appealed pursuant to 18 U.S.C. Sec. 3731 and we now reverse.
 
 I.
 
 6
 The appellees, along with others not before this court, were indicted by a federal grand jury in the Western District of Tennessee for conspiracy and various substantive offenses related to the ownership and operation of an illegal gambling business. When federal agents searched an apartment leased by the defendant Daniel Rokitka they found a great deal of gambling paraphernalia. They also observed tape recorders attached to the two telephones in the apartment and seized fifteen audio cassette tapes. FBI agent Richard Gray, who listened to the tapes, testified at the suppression hearing that the recorded conversations involved the exchange of gambling information and the placing of bets on sporting events. Agent Gray also stated that the telephones were manned by defendants Rokitka and Underhill, and the recordings contained conversations with defendants Person, Tata, Rayburn and Eddie and Joe Osborne.
 
 
 7
 Unless there is a specific section of the statute which excepts a particular interception, all willful interceptions of wire and oral communications are prohibited by the Act. 18 U.S.C. Sec. 2511(1)(a). Willful disclosure of the contents of communications by a person who knows or has reason to know that the information was obtained through an unlawful interception is also forbidden. 18 U.S.C. Sec. 2511(1)(c). The exceptions to the general proscription against interceptions are contained in 18 U.S.C. Sec. 2511(2). The defendants contend that the only exception which could render the tapes legal and therefore admissible does not apply because of the purpose for which the recordings were made. They refer to 18 U.S.C. Sec. 2511(2)(d):
 
 
 8
 (d) It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or for the purpose of committing any other injurious act.
 
 
 9
 There was no dispute at the suppression hearing over the purpose of the interceptions. Agent Gray testified that he had interviewed defendant Rokitka in the presence of an attorney, and Rokitka stated that the purpose of the tapes was to record the bets as made, in order to prevent disagreements with bettors over the amount of their wagers. Also, on one of the tapes Underhill told the other party to a telephone conversation that he recorded everything to correct the problem of bettors trying to change the amounts of their bets after losing. One of the statutes under which the defendants were indicted, 18 U.S.C. Sec. 1955, makes it a crime to carry on a gambling business which is a violation of the law of the state in which it is conducted. Tennessee has laws which make gambling illegal, including one against making or possessing gambling records. Tennessee Code Annotated (TCA) Sec. 39-6602(e) (1982). In granting the defendants' motion to suppress the tapes, the district court, referring to the tape on which Underhill discussed the practice of recording, stated in an unpublished order, "This taped conversation clearly establishes that the interception of telephone conversations wherein bets were made was for the purpose of committing a criminal act under multiple criminal laws of the state of Tennessee pertaining to gambling, gambling records, and transmitting gambling information."
 
 
 10
 During the evidentiary hearing the district judge noted the anomaly created by the defendants' motions:
 
 
 11
 [T]his is the first time I've ever had defendants ... come in and ... say ... I admit I was being unlawful and, therefore, you can't use the evidence. It's a little bit awkward.
 
 
 12
 Nevertheless, the court found the language of the statute clear and unambiguous and felt compelled to comply with its command.
 
 II.
 A.
 
 13
 Repeating the arguments which prevailed in the district court, the defendants contend that the language of the Act is clear in every respect relevant to this appeal and must be applied as written. As they point out, the Act makes all interceptions of oral and wire communications illegal unless specifically excepted. Turning to 18 U.S.C. Sec. 2511(2)(d), they recognize that interceptions by private persons not acting under color of law are permitted if the interceptor is a party to the communication or one of the parties to the communication has consented to the interception. However, this exception to the general prohibition against interceptions is itself subject to an exception. A private interception that otherwise would be lawful is rendered unlawful if the interception is made for the purpose of committing any criminal act. Since the only evidence produced at the suppression hearing demonstrated that Underhill and Rokitka made the interceptions for the purpose of committing criminal acts, the defendants maintain that the clear language of the Act makes the interceptions unlawful.
 
 
 14
 The defendants then assert that Sec. 2515 unequivocally prohibits the admission into evidence of the contents of the tapes in their trial because the disclosure of the information on the tapes would violate 18 U.S.C. Secs. 2511(1)(c) and (d). Finally, the defendants invoke Sec. 2515 as "aggrieved persons" within the definition contained in Sec. 2510(11) who have standing to seek suppression pursuant to Sec. 2518(10)(a)(i). In short the defendants argue that they satisfied every requirement of the Act for suppression of the tapes.
 
 
 15
 Although they contend that the language of the Act is clear and requires no reliance on extrinsic evidence for its meaning, the defendants also argue that the legislative history of the Act supports their construction. To bolster this argument they quote from S.Rep. No. 1097, 90th Cong., 2d Sess., reprinted in 1968 U.S. Code Cong. & Admin.News 2112, 2184-85:
 
 
 16
 Section 2515 of the new chapter imposes an evidentiary sanction to compel compliance with the other prohibitions of the chapter. It provides that intercepted wire or oral communications or evidence derived therefrom may not be received in evidence in any proceeding before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision of a State, where the disclosure of that information would be in violation of this chapter.
 
 
 17
 * * *
 
 
 18
 * * *
 
 
 19
 The provision thus forms an integral part of the system of limitations designed to protect privacy. Along with the criminal and civil remedies, it should serve to guarantee that the standards of the new chapter will sharply curtail the unlawful interception of wire and oral communications.
 
 
 20
 In addition, the defendants point to the findings of Congress in connection with the enactment of Title III:
 
 
 21
 In order to protect effectively the privacy of wire and oral communications, to protect the integrity of court and administrative proceedings, and to prevent the obstruction of interstate commerce, it is necessary for Congress to define on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized, to prohibit any unauthorized interception of such communications, and the use of the contents thereof in evidence in courts and administrative proceedings.
 
 
 22
 Pub.L. 90-351, Sec. 801(b), reprinted in 1968 U.S.Code Cong. & Admin.News 237, 253. Thus, they emphasize the intent of Congress to protect privacy in oral and wire communications by outlawing all wiretapping and electronic surveillance unless strict procedures are followed.
 
 B.
 
 23
 The government argues that Congress did not intend to permit lawbreakers to immunize themselves from prosecution by their own acts, the criminal purpose of which made the interceptions illegal. The principal purpose of the Omnibus Crime Control Act was to combat organized crime, and Title III provides for the use of authorized interceptions to further this objective. It would be a complete perversion of the Act, the government contends, to permit criminals who have deliberately violated the law against interceptions to benefit from this violation, enabling them to suppress the most persuasive evidence of their wrongdoing. While conceding that one of the purposes of the Act is to protect privacy in communications, the government asserts that congressional concern was for the privacy of parties to a conversation who have not caused the interception or consented to it. The defendants' own proof shows that Underhill and Rokitka actually caused the interceptions and the other defendants took the risk of electronic surveillance by conducting their illegal business with Underhill and Rokitka over the telephone.
 
 
 24
 The government also argues that the legislative history, and at least one Supreme Court decision, make clear that the perpetrator of an unlawful interception is not to benefit from his illegal act and that only victims of such interceptions have standing to suppress the contents. There is little legislative history with respect to Sec. 2511(2)(d), because it was adopted as an amendment on the floor of the Senate. However, the government maintains that the statements of its sponsors indicate that their intent was not to benefit persons in the position of the defendants. Finally, the government argues that the purpose of the interception by Underhill and Rokitka was merely to preserve an accurate record of their transactions to prevent later distortion by the other parties to the conversations, and that such a defensive act is not "for the purpose of committing any criminal or tortious act."
 
 III.
 
 25
 It appears that the precise question presented in this case has not been decided by the Supreme Court or a Court of Appeals, although the provisions of the Act now under review have been considered in other settings. We begin our analysis with several observations about which there is no controversy.
 
 A.
 
 26
 As part of the Omnibus Crime Control Act, Title III furthers the primary purpose of that statute to provide more effective means for combatting organized crime in the United States. Thus, Title III provides for the interception of wire or oral communications when sought by the Attorney General or his designee and authorized by a federal judge. 18 U.S.C. Sec. 2516. The Act imposes stringent requirements which must be met in seeking authorizations to carry out interceptions. The Act requires reports on interceptions actually effected and severely limits the use and disclosure of authorized intercepted wire and oral communications. 18 U.S.C. Secs. 2516-19. All of these provisions are intended to make electronic surveillance available as a tool of law enforcement within a framework of carefully crafted procedural restraints designed to protect the constitutional rights of the targets of such surveillance. The second purpose of Title III is to prohibit all other interceptions and disclosures of wire and oral communications unless specifically authorized by a provision of the Act. 25 U.S.C. Secs. 2511-15. Both purposes appear in the findings of Congress and in the legislative history.
 
 B.
 
 27
 Since the interceptions we are concerned with were made by private individuals who were not acting under color of law, the exception contained in Sec. 2511(2)(d) is the only one that is arguably applicable. It is settled that the legality of an interception is determined by the purpose for which the interception is made, not by the subject of the communications intercepted. United States v. Truglio 731 F.2d 1123, 1131 (4th Cir.), cert. denied, 469 U.S. 862, 105 S.Ct. 197, 83 L.Ed.2d 130 (1984). Thus, the fact that the parties to the intercepted conversations discussed illegal gambling does not affect the legality of the interception.
 
 
 28
 Generally, when the purpose of an interception is to make or preserve an accurate record of a conversation in order to prevent future distortions by a participant, the interception is legal. By-Prod Corp. v. Armen-Berry Co., 668 F.2d 956, 959 (7th Cir.1982); United States v. Phillips 564 F.2d 32, 33 (8th Cir.1977). This conclusion is supported by the scant legislative history accompanying Sec. 2511(2)(d), which was added to Title Ill as a floor amendment. The sponsor of the amendment, Senator Hart of Michigan, emphasized the defensive purpose of the amendment, to protect a nonconsenting party to an intercepted conversation from the danger that another party might use the contents for some criminal purpose such as blackmail or some other tortious or injurious purpose. The entire focus of Senator Hart's comments was on protecting an innocent party from injury or embarrassment. This is clear from his objections to Sec. 2511(2)(c) as originally proposed as well as his comments on the substitute provision that he sponsored. See Meredith v. Gavin, 446 F.2d 794, 797-98 and n. 5 (8th Cir.1971).
 
 
 29
 Underhill and Rokitka testified that the purpose of taping the conversations was to make a record that would settle any future disputes about the terms of the betting transactions. Despite the general nature of the transactions sought to be memorialized by recording, this purpose might be deemed noncriminal, and the interceptions lawful. Phillips, 564 F.2d at 33; United States v. Turk, 526 F.2d 654, 657 (5th Cir.), cert. denied, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976). The question is whether the interceptions were made "for the purpose of committing any criminal ... act" under the laws of Tennessee. The recording was not an element of the criminal act of making and accepting bets. These transactions were unlawful in themselves and the recordings added nothing. However, the taping of the conversations did make a "gambling record" as defined in TCA Sec. 39-6-601(7), and TCA Sec. 39-6-602(e) provides that it is a misdemeanor to knowingly make, possess or store a gambling record. Thus, we must conclude that the communications were intercepted for the purpose of committing a criminal act. However, this does not end our inquiry. We must also decide whether the exclusionary rule contained in Sec. 2515 applies under the circumstances of this case.
 
 IV.
 
 30
 It seems clear that neither the general purpose of Title III to protect the privacy of parties who use wire and oral communications nor the particular purpose of Sec. 2511(2)(d) to prevent misuse of the contents of such communications against a party to such communications would be served by suppressing the tapes in this case. In fact, to do so would turn the statute on its head. It is the duty of a court in construing a federal statute to discover and carry out the intent of Congress. When the intent of Congress is expressed in "reasonably plain terms," a court must ordinarily treat that language as conclusive. Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 570, 102 S.Ct. 3245, 3249, 73 L.Ed.2d 973 (1982). Nevertheless, it is the intention of Congress that controls, and a result contrary to the literal meaning of the words is justified when "the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters...." Id. at 571, 102 S.Ct. at 3250.
 
 
 31
 The Supreme Court, speaking through Justice Reed, provided a comprehensive statement in United States v. American Trucking Associations, Inc., 310 U.S. 534, 542-44, 60 S.Ct. 1059, 1063-64, 84 L.Ed. 1345 (1940):
 
 
 32
 In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress. There is no invariable rule for the discovery of that intention. To take a few words from their context and with them thus isolated to attempt to determine their meaning, certainly would not contribute greatly to the discovery of the purpose of the draftsmen of a statute, particularly in a law drawn to meet many needs of a major occupation.
 
 
 33
 There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination." The interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function. This duty requires one body of public servants, the judges, to construe the meaning of what another body, the legislators, has said. Obviously there is danger that the courts' conclusion as to legislative purpose will be unconsciously influenced by the judges' own views or by factors not considered by the enacting body. A lively appreciation of the danger is the best assurance of escape from its threat but hardly justifies an acceptance of a literal interpretation dogma which withholds from the courts available information for reaching a correct conclusion. Emphasis should be laid, too, upon the necessity for appraisal of the purposes as a whole of Congress in analyzing the meaning of clauses or sections of general acts. A few words of general connotation appearing in the text of statutes should not be given a wide meaning, contrary to a settled policy, "excepting as a different purpose is plainly shown."
 
 
 34
 (Footnotes omitted).
 
 B.
 
 35
 As the Supreme Court affirmed in Gelbard v. United States, 408 U.S. 41, 48, 92 S.Ct. 2357, 2361, 33 L.Ed.2d 179 (1972), "although Title III authorizes invasions of individual privacy under certain circumstances, the protection of privacy was an overriding congressional concern." (Footnote omitted). However, Title III provides protection to the victims of unlawful interceptions, not to the perpetrators. Quoting Senate Report No. 1097, the Gelbard Court supplied the emphasis in this sentence: "The perpetrator must be denied the fruits of his unlawful actions in civil and criminal proceedings." Id. at 50, 92 S.Ct. at 2362. We think it is clear that Congress did not intend for Sec. 2515 to shield the very people who committed the unlawful interceptions from the consequences of their wrongdoing. Underhill and Rokitka waived their right of privacy in these communications by their deliberate act of causing them to be recorded. If the language of Secs. 2511(2)(d) and 2515 were applied literally to Underhill and Rokitka it would produce an absurd result that we are confident Congress did not intend.
 
 
 36
 The defendant Person argues that he did not consent to the interception of his conversations, and therefore is entitled to suppress the tapes that contain those conversations. If Person were a mere "customer" of the gambling establishment, this argument would be worthy of consideration. However, as a confederate of Underhill and Rokitka in the gambling business, Person waived his right of privacy in the conversations. All of the appellees were charged with conspiracy, and the evidence produced by the defendants at the suppression hearing indicated that all were in fact members of a conspiracy. As a member of the conspiracy Person was bound by the acts of his co-conspirators and may be held to have waived his right of privacy in communications made in furtherance of the purposes of the conspiracy. Pinkerton v. United States, 328 U.S. 640, 646-48, 66 S.Ct. 1180, 1183-84, 90 L.Ed. 1489 (1946); United States v. Bowers, 739 F.2d 1050, 1052 (6th Cir.), cert. denied sub nom. Oakes v. United States, 469 U.S. 861, 105 S.Ct. 195, 83 L.Ed.2d 128 (1984).
 
 
 37
 Each party to a conversation takes the risk that the other party will record and divulge the contents of that conversation. Smith v. Cincinnati Post & Times Star, 475 F.2d 740, 741 (6th Cir.1973); United States v. Felton, 753 F.2d 256, 259 (3d Cir.1985). In enacting Sec. 2511(2)(d), Congress sought to protect parties from this risk by making otherwise legal interceptions unlawful if the purpose of the interception was an act enumerated in the statute. In doing so it did not intend to deprive prosecutors of the most cogent evidence of wrongdoing because the defendants record evidence of their crimes by intercepting communications with their confederates. Such a result would be "plainly at variance with the policy of the legislation as a whole." American Trucking Associations, 310 U.S. at 543, 60 S.Ct. at 1064.
 
 
 38
 We have considered all of the authorities cited by the defendants including the isolated statement in United States v. Jones, 542 F.2d 661, 668 (6th Cir.1976), "Although the primary target of the bill was organized crime, the Senate Report makes it clear that the purpose of the bill was to establish an across-the-board prohibition on all unauthorized electronic surveillance...." The issue in Jones was whether there was an implied exception for interspousal communications, and this court held there was not such an exception. The court was not considering a case such as the present one where a literal reading of the Act would have provided an unintended benefit to organized crime. (The district court held in this case that gambling enterprises in the Western District of Tennessee constituted organized crime). We conclude that no right of privacy sought to be protected by the enactment of Title III will be violated by the admission of the 15 tape cassettes.
 
 
 39
 The judgment of the district court is reversed.