**UNITED STATES of America,**
**Plaintiff,**

v.

**Mei Keng LAM, Defendant.**

**No. CR01–0099 MHP.**

United States District Court,
N.D. California.

June 6, 2003.

Brian Stretch, Esq., U.S. Attorney's Office, San Francisco, CA, for Plaintiff.

William Weiner, Esq., Law Offices of William Weiner, San Francisco, CA, for Defendants.

## MEMORANDUM AND ORDER

### re Defendant's Motion to Suppress Pursuant to 18 U.S.C. § 2515

PATEL, Chief Judge.

Mei Keng Lam has been charged with participating in illegal gambling activities in violation of 18 U.S.C. section 1955. Lam now moves to suppress taped telephone conversations, recorded by her codefendant to serve as receipts for wagers, in which she allegedly places bets with the gambling operation. Having considered the submissions and arguments of the parties, and for the reasons set forth below, the court rules as follows.

*BACKGROUND*

For purposes of the present motion, the parties have stipulated to the following facts. In the course of an investigation of illegal gambling activities, law enforcement officers searched the home of Yip Sir, a codefendant in the present action, pursuant to a warrant. The search yielded, among other evidence, tape recordings of telephone conversations in which Yip Sir conducted his gambling business with callers by taking bets or arranging to settle balances. Yip Sir taped these conversations himself to serve as proof of the bets placed and payments offered, but did not obtain the consent of the persons with whom he spoke.[1] On several of these tapes, Yip Sir spoke with Lam about bets and took bets from her.

---

1. Lam maintains that she did not consent to the taping of any conversations and was not aware that conversations were being taped. Lam Dec. ¶ 2. The government does not stipu-

*DISCUSSION*

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510–2520, tightly regulates the use of wiretaps and other electronic surveillance by both government agents and private citizens. In addition to imposing civil and criminal penalties for improper interception of communications, the statute also prohibits the use of unlawful interceptions and their fruits as evidence in federal proceedings:

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

18 U.S.C. § 2515.

Because Title III forbids disclosure of the contents of any electronic communication known to have been intercepted unlawfully, 18 U.S.C. § 2511(1)(c), section 2515 requires suppression of any unlawfully intercepted communications. Lam argues that Yip Sir's original interception of the telephone conversation was unlawful and that the tapes therefore must be suppressed.

### I. *Lawfulness of Yip Sir's Interception*

Title III prohibits all interceptions of electronic communications not specifically authorized by its own provisions. 18 U.S.C. § 2511(1)(a). Among other authorized uses, the statute provides that pri-

---

late to this particular fact, but does not point to any evidence to contradict Lam's declaration.

vate individuals may intercept communications "where such person is a party to the communication ... unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Although the tapes contain Yip Sir's interceptions of his own conversations, the government alleges that Yip Sir surreptitiously made the recordings as a means of keeping business records for his unlawful gambling activities. The government concedes that this is an unlawful purpose, and that as such Yip Sir's recordings do not fall within the exception set forth in section 2511(d)(2). Because the interceptions do not fit within any statutory exceptions, they are unlawful under Title III. 18 U.S.C. § 2511(1)(a).

II. *Suppression of Unlawfully Intercepted Communications under Section 2515*

Lam maintains that because her conversations with Yip Sir were unlawfully intercepted, they must be suppressed pursuant to section 2515, the text of which contemplates the exclusion of all communications which were unlawfully intercepted. The government argues that despite the language of section 2515, the provision should not be applied to suppress evidence where one of the parties to the communication consented to the interception.

In support of her position that the tape recorded conversations should be excluded, Lam relies primarily on *United States v. Vest*, 813 F.2d 477 (1st Cir.1987). In *Vest*, the payor of a bribe used electronic means to tape record the bribery transaction as proof of his payment to the defendant, in violation of Title III. When the bribe turned out to be ineffective, the payor turned the tapes over to the government. Vest was prosecuted for perjury based on statements he made before a grand jury in which he denied playing any role in the

bribery transaction. *Id.* at 479. Vest then moved for suppression of the tapes pursuant to section 2515.

The First Circuit ruled that section 2515 required suppression of the unlawfully intercepted conversations, rejecting the government's argument that no suppression was required where the government played no role in the unlawful interception. The court began by noting that section 2515, on its face, requires exclusion of any communications if the disclosure of the communications would violate Title III. The court also found that exclusion served the purposes of Title III and section 2515. Citing the Supreme Court's opinion in *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972), the *Vest* court noted that Congress intended section 2515 not only to deter unlawful surveillance by the government, but also to protect the privacy of individuals by preventing disclosure at trial of unlawfully intercepted communications. 813 F.2d at 481 ("[A]n invasion of privacy is not over when an interception occurs, but is compounded by disclosure in court or elsewhere. The impact of this second invasion is not lessened by the circumstance that the disclosing party (here, the government) is merely the innocent recipient of a communication illegally intercepted by the guilty interceptor ...."); *see also Gelbard*, 408 U.S. at 50, 92 S.Ct. 2357 (the "importance [of section 2515] as a protection for 'the victim of an unlawful invasion of privacy' could not be more clear"). Because the disclosure of intercepted communications through their introduction into evidence at trial would intrude on the privacy of the individual recorded whether the government had unlawfully intercepted the communications or simply received them from a third party, the *Vest* court concluded that an innocent recipient exception to 2515 would undermine the provision's purpose of protecting privacy. *Id.*

at 481. While the Sixth Circuit in *United States v. Murdock,* 63 F.3d 1391 (6th Cir. 1995), *cert. denied,* 517 U.S. 1187, 116 S.Ct. 1672, 134 L.Ed.2d 776 (1996), disagreed with the *Vest* court and found an innocent recipient exception to section 2515, the Ninth Circuit has explicitly endorsed the reasoning in *Vest* and rejected the innocent recipient exception. *See Chandler v. United States Army,* 125 F.3d 1296, 1302 (9th Cir.1997) (rejecting clean hands exception to use of unlawfully intercepted communications in military disciplinary proceedings).

Noting that the Ninth Circuit has rejected an innocent recipient exception to section 2515, the government here seeks a slightly different exception to section 2515. The government argues that section 2515 should not apply because one party to the communication, Yip Sir, consented to the interception.[2] In support of its position, the government relies primarily on *United States v. Puchi,* 441 F.2d 697 (9th Cir.), *cert. denied,* 404 U.S. 853, 92 S.Ct. 92, 30 L.Ed.2d 92 (1971) and *United States v. Underhill,* 813 F.2d 105, 110–11 (6th Cir.), *cert. denied,* 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987).

In *Puchi,* an informant placed several telephone calls to the defendant in which they discussed arrangements for an illegal liquor transaction. With the prior consent of the informant, custom agents tape recorded the telephone conversations. 441 F.2d at 699–700. The court found the taped conversations admissible under Title III, providing only a single explanatory sentence: "In our view the provisions of [Title III] do not preclude the use of intercepted communications when one of the parties thereto consented to the interception." Although this broad language is compatible with the consent exception that

the government seeks, such a reading is not necessary to reach the result in *Puchi.* From its inception, Title III has authorized interception of communications by a person "acting under color of law ... where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c); *see also* 82 Stat. at 241. In *Puchi,* the police officer's surveillance with the consent of the informant was clearly authorized under this provision, and suppression of the tapes therefore would not have been required under section 2515. It seems a far more natural interpretation of the *Puchi* court's sparse reasoning that the interception fell under this authorized use than that the court created a prior consent exception to section 2515 unnecessarily and *sub silentio.*

In *Underhill,* the Sixth Circuit addressed the suppression of tape recordings made by some members of an illegal gambling operation, who had intercepted numerous telephone conversations involving the exchange of gambling records and the placing of bets. Not all the members of the gambling operation knew that their telephone calls with customers were being recorded. As in the present case, the court found that although the telephone conversations were intercepted by a party to the communications, interceptions were unauthorized under Title III because they were intercepted with the purpose of committing an unlawful act. 813 F.2d at 110–11. The court therefore considered whether section 2515 required suppression of the tapes in the trial.

The *Underhill* court first refused to suppress tape recordings in the trials of those defendants who had made the tape record-

---

**2.** Although in *Vest,* the payor who unlawfully recorded the bribery payment obviously consented to the interception, the court did not

address whether this consent rendered section 2515 inapplicable.

ings. Noting that Congress created Title III to guard against invasions of individual privacy, the court reasoned that Congress intended "[to provide] protection to the victims of unlawful interceptions, not to the perpetrators.... We think it is clear that Congress did not intend for § 2515 to shield the very people who committed the unlawful interceptions from the consequences of their wrongdoing." *Id.* at 112. The court also declined to exclude the taped conversation from evidence in the trial of another organizer of the gambling operation who claimed not to have known that his telephone calls were recorded. The court found that as a member of the gambling conspiracy, even the non-consenting organizer was "bound by the acts of his coconspirators and [could] be held to have waived his right of privacy in communications made in furtherance of the purposes of the conspiracy." *Id.*

The rule adopted in *Underhill* is not the broad exception that the government would have it be. The *Underhill* court did not find that section 2515 does not apply where either party has consented to the interception, but instead created a narrower exception that prevents a defendant from seeking exclusion of recordings he himself made on grounds that he made them unlawfully. Lam cannot be charged with the high degree of chutzpah required to fit this exception—she was not the party giving consent to the recording of the telephone conversations, but was a party whose privacy was invaded by Yip Sir's illegal interception. *See Murdock,* 63 F.3d at 1402 (distinguishing case from *Underhill* "in that the defendant was not the perpetrator but rather the victim of the interception and recording."). Nor has the government provided any evidence of conspiracy that would establish the con-

structive consent found in *Underhill.* The government did not charge Lam with conspiracy, though it maintains she acted as Yip Sir's agent in the gambling operation. More importantly, the government has proffered no evidence of conspiratorial conduct other than the content of the challenged tapes themselves, in which Lam simply discusses odds and places bets.[3] Because she has not been shown to be part of any conspiracy, even under the *Underhill* court's rationale, she cannot be deemed to have given constructive consent to the decision by the operators of the business to record telephone calls unlawfully in furtherance of the business. *Cf. Underhill,* 813 F.2d at 112 (noting that nonconsenting defendant's claim would have been different had he been a customer of the gambling business rather than a coconspirator). Even were this court to adopt the *Underhill* rule, section 2515 would still apply and require suppression of the conversations between Lam and Yip Sir.

 The government provides no reason for extending the rule of *Underhill* to the present case, nor can the court discern one. A significant purpose of section 2515 is to protect against the invasion of the defendant's privacy by the introduction of unlawfully intercepted communications at trial. *Gelbard,* 408 U.S. at 48, 50, 92 S.Ct. 2357; *Chandler,* 125 F.3d at 1302. While an individual's decision to record her telephone conversations unlawfully could not sensibly be seen as a threat to her own privacy, the same is not true of an unlawful recording by another party to the conversation. The court therefore declines hold section 2515 inapplicable whenever any party to an unlawfully intercepted

---

3. At oral argument, the government proffered the testimony of an expert in gambling racketeering, who would testify that based on the

conversations between Lam and Yip Sir, that Lam was acting as his agent rather than just a customer.

communication has consented to the interception.

*CONCLUSION*

For the foregoing reasons, defendant's motion pursuant to 18 U.S.C. section 2515 to suppress the audio tapes of unlawfully intercepted telephone conversations is GRANTED.

IT IS SO ORDERED.