Bernardo **VAZQUEZ–SANTOS,**
Plaintiff,

v.

**EL MUNDO BROADCASTING COR-PORATION; Luis Francisco Oje-da, et al., Defendants.**

No. CIV. 01–2219(JAF).

United States District Court,
D. Puerto Rico.

Sept. 19, 2003.

Bernardo Vazquez–Santos, Guaynabo, Luis A. Pagan, Riverhead, NY, for Bernardo Vazquez–Santos, plaintiff.

Jose A. Pagan–Nieves, San Juan, PR, for Luis Francisco Ojeda, defendant.

Heriberto J. Burgos–Perez, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for El Mundo Broadcasting Corp. WKAQ–FM, defendant.

Dario Rivera–Carrasquillo, San Juan, PR, for American Intern. Ins. Co. of Puerto Rico.

Luis A. Pagan, Riverhead, NY, for Cecilia Sanchez–Soldevila, Conjugal Partnership, plaintiff.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiff, Bernardo Vázquez–Santos, brings the present action against Defendants, Luis Francisco Ojeda, his wife Nilda E. Salina–Mujica, their conjugal partnership, El Mundo Broadcasting Corporation ("El Mundo"), and unnamed Defendants, pursuant to the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510–2220 (2003) ("Federal Wiretap Statute"). *Docket Document No. 42.* Defendants El Mundo and Ojeda moved to dismiss the complaint. *Docket Document Nos. 24, 25, 40.* On August 30, 2002, we denied Defendants' motion to dismiss. *Docket Document No. 63.*

On May 22, 2003, Defendant El Mundo submitted a motion for summary judgment, *Docket Document No. 196,* which Defendant Ojeda joined on July 2, 2003. *Docket Document No. 209.* Plaintiff opposed the motion on June 24, 2003. *Docket Document No. 202.* On August 8, 2003, Plaintiff submitted a cross-motion for summary judgment, which Defendants El Mundo and Ojeda oppose. *Docket Document No. 212, 220, 222.*

## I.

### *Factual and Procedural Synopsis*

Because the factual circumstances of this case have not changed materially since our August 30, 2002, Opinion and Order, we merely redact the facts here, expounding where appropriate with the parties' unopposed statements of fact. *Docket Document Nos. 63, 196, 202.*

Plaintiff is a resident of Guaynabo, Puerto Rico. Plaintiff is an attorney, but is currently not engaged in the practice of law. Plaintiff was the legal counsel to Pedro Rosselló, former Governor of Puerto Rico. His offices were at the Governor's executive mansion, La Fortaleza. Plaintiff's work at La Fortaleza was paid with public funds.

Defendant El Mundo is a corporation authorized to do business in Puerto Rico. Defendant El Mundo owns and operates two radio stations in Puerto Rico, WKAQ in San Juan, and WUKQ in Ponce.

Defendant Ojeda is a resident of Guaynabo. At the time of the events in question, he worked as a radio reporter and commentator for WKAQ. Defendant Salinas–Mujica is the wife of Defendant Ojeda.

In April 2000, Plaintiff requested that one or both of his secretaries contact the heads of the state agencies of Puerto Rico to invite them to a New Progressive Party fund raiser. Plaintiff's secretaries were all paid with public funds. Plaintiff's secretaries sent a fax to all the heads of the agencies in Puerto Rico. Shortly after the

fax was sent, Defendant Ojeda was informed of its existence.

On the afternoon of May 8, 2000, Defendant Ojeda called Plaintiff at his office in La Fortaleza. Defendant Ojeda informed Plaintiff's secretary that he was calling "from the newsroom at WKAQ." When Plaintiff came on the line, Defendant Ojeda identified himself to Plaintiff.

Defendant Ojeda asked Plaintiff whether the fax machine at his office, which is paid for with public funds, was used to send invitations to a political fund raiser. *See Docket Document No. 24.* Defendants Ojeda and El Mundo intercepted and recorded the conversation. Defendant Ojeda did not warn Plaintiff that he was being recorded, nor did Defendant Ojeda obtain consent from Plaintiff to tape the telephone call. Plaintiff did not suspect that he was being recorded, nor did he think that Defendant Ojeda was conducting the interview in preparation for a future radio broadcast or for any other public purpose.

A few hours later, Defendant El Mundo broadcast an edited portion of the interview during its regular news program on WKAQ and on its affiliated radio stations throughout Puerto Rico. The radio commentator announced that Plaintiff might have committed a crime and invited listeners to tune in for a broadcast of the entire interview later that evening. Defendant El Mundo did not verify the information obtained by Defendant Ojeda.

Later that evening, Defendant El Mundo aired a more complete version of the interview between Plaintiff and Defendant Ojeda. The interview was broadcast during the "Ojeda Sin Límite" program on WKAQ and on its affiliated stations. Plaintiff was not informed about these two broadcasts, nor did he consent to the disclosure of his conversation with Defendant Ojeda.

The Federal Communications Commission ("FCC") conducted an investigation of these events to determine if Defendant El Mundo had violated the commissions' rules by recording and broadcasting a telephone conversation without first informing the party to the conversation of its intention to do so. 47 C.F.R. § 73.1206 (2003). The FCC entered a forfeiture order in the amount of $4,000 against Defendant El Mundo, finding that Defendant El Mundo violated the regulation. The forfeiture order's effect on the cause of action here is discussed more fully, *infra.*[1]

Plaintiff filed his original complaint on September 14, 2001. *Docket Document No. 1.* Plaintiff filed an amended complaint on January 17, 2002. *Docket Document No. 42.* Plaintiff alleges that this court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 (1993), 18 U.S.C. § 2511, and 18 U.S.C. § 2520. Plaintiff brings related state-law claims against Defendants. Plaintiff maintains that Defendants violated numerous provisions, listed *infra,* of the Puerto Rico Criminal Code, Puerto Rico Civil Code, Puerto Rico Constitution, and United States Constitution.

On December 17, 2001, Defendants El Mundo and Ojeda moved to dismiss the complaint for failure to state a claim upon which relief can be granted. *Docket Document Nos. 24, 25.* Defendants argued that Plaintiff has failed to state a claim under the Federal Wiretap Statute. Defendants averred that Plaintiff's allegations fail to show that the communication was intercepted for the purpose of committing a criminal or tortious act, contending that the telephone call was recorded for lawful news-gathering purposes.

---

1. *See infra,* at 16 n. 5.

On March 22, 2002, Plaintiff filed an opposition to Defendants' Rule 12(b)(6) motion, *Docket Document No. 48,* alleging that Defendants intercepted the telephone communication with the purpose of committing criminal and tortious acts. *Id.* Plaintiff alleges that Defendants intercepted the communication for a criminal or tortious purpose, in violation of the following provisions: (1) Article 118 of the Puerto Rico Criminal Code, 33 L.P.R.A. § 4101 (1983) (libel); (2) Article 144 of the Puerto Rico Criminal Code, 33 L.P.R.A. § 4185 (1983 & Supp. I 1998) (interception of private verbal communication); (3) Article 145 of the Puerto Rico Criminal Code, 33 L.P.R.A. § 4186 (1983 & Supp. I 1998) (recording of communications); (4) Article 146 of the Puerto Rico Criminal Code, 33 L.P.R.A. § 4187 (1983 & Supp. I 1998) (disclosure of private communication); (5) Article 147 of the Puerto Rico Criminal Code, 33 L.P.R.A. § 4188 (1983 & Supp. I 1998) (publication of private communication); (6) Article 148 of the Puerto Rico Criminal Code, 33 L.P.R.A. § 4189 (1983 & Supp. I 1998) (alteration of messages); (7) Article 149 of the Puerto Rico Criminal Code, 33 L.P.R.A. § 4190 (1983) (improper use of private communication); (8) Article 1802 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141 (1991) (obligation when damage caused by fault or negligence); (9) Article II, Section 1 of the Puerto Rico Constitution, P.R. CONST. art. II, § 1,[2] (human dignity and equality; discrimination prohibited); (10) Article II, Section 4 of the Puerto Rico Constitution, P.R. CONST. art. II, § 4 (freedom of speech and press; peaceful assembly; petition for redress of grievances); (11) Article II, Section 8 of the Puerto Rico Constitution, P.R. CONST. art. II, § 8 (protection against attacks on honor, reputation, and private life); (12) Article II, Section 10 of the Puerto Rico Constitution, P.R. CONST. art. II, § 10 (searches and seizures; wiretapping; warrants); and (13) the First Amendment of the United States Constitution, U.S. CONST. amend. I. *Docket Document No. 42.* Further, Plaintiff asseverated that Defendants Ojeda and El Mundo had an obligation, as a professional courtesy, to inform him that they wanted to record the conversation and to obtain his consent before doing so. *Id.* Plaintiff submitted that Defendants' violation of FCC regulations constitutes evidence of their criminal and tortious intent. *Id.* Plaintiff maintained that dismissal of the complaint was inappropriate because discovery was required to establish Defendants' purpose in intercepting the communication and broadcasting the interview. *Id.* Plaintiff also contended that the issue of Defendants' purpose in intercepting the telephone call is a question of fact reserved for the jury. *Id.* Plaintiff and Defendants filed their replies. *Docket Document Nos. 54, 59.*

On August 30, 2002, we issued our Opinion and Order. *Docket Document No. 63.* We found that journalists were not exempted from the workings of the Federal Wiretap Statute by virtue of the First Amendment. We also found that the success of Plaintiff's claim under the Federal Wiretap Act depended on whether Defendants' purpose at the time of the recording was to commit a crime or tort. Because we found that the record was undeveloped at the motion to dismiss stage, we denied Defendants' motion to dismiss. *Id.*

---

**2.** "The provisions of the Puerto Rico Constitution are said to operate *ex proprio vigore,* without the need for an effectuating statute comparable to § 1983." *Robles–Vazquez v. Tirado Garcia,* 110 F.3d 204, 207 (1st Cir. 1997). For example, "[t]he rights safeguarded by [P.R. CONST. art. II, §§ 1, 8] operate, *ex proprio vigore,* to make violators amenable to tort-damage awards." *Rivera–Flores v. P.R. Tel. Co.,* 64 F.3d 742, 751 (1st Cir.1995).

Defendants filed a motion for summary judgment on May 22, 2003, averring, *inter alia*, that Plaintiff has failed to show that Defendants had the requisite "purpose" under the Federal Wiretap Act. *Docket Document No. 196.* Plaintiff has opposed the motion, *Docket Document No. 202,* and has filed his own summary judgment motion, *Docket Document No. 212,* which Defendants have opposed. *Docket Document No. 220, 222.*

## II.

### *Summary Judgment Standard*

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Lipsett v. Univ. of P.R.,* 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," and "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The burden of establishing the nonexistence of a genuine issue as to a material fact is on the moving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* In other words, "[t]he party moving for summary judgment ... bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." *Hinchey v. NYNEX Corp.,* 144 F.3d 134, 140 (1st Cir.1998). This burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex,* 477 U.S. at 322–25, 106 S.Ct. 2548).

Although the ultimate burden of persuasion remains on the moving party and the court should draw all reasonable inferences in favor of the nonmoving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties"; the requirement is that there be a genuine issue of material fact. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505; *Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993). In addition, "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Under Rule 56(e) of the Federal Rules of Civil Procedure, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment exists to "pierce the boilerplate of the pleadings," *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992), and "determine whether a trial actually is necessary." *Vega–Rodriguez v. P.R. Tel. Co.,* 110 F.3d 174, 178 (1st Cir.1997).

### III.

### *Analysis*

After sifting through the parties' averments, what emerges is quite simple. Our motion to dismiss framed the issue. *Docket Document No. 63.* To succeed, Plaintiff must prove that Defendants' purpose under the Federal Wiretap Act was criminal or tortious. Plaintiff avers that Defendants' purpose was to defame and injure him in violation of state laws, listed *supra.* He contends that summary judgment is inappropriate because this case ultimately involves a matter of fact—whether Defendants' purpose was to commit any of these state law transgressions. As Defendants have shown, however, Plaintiff has failed to proffer any evidence to suggest that Defendants' purpose was to violate any of these state law claims.

■ The Federal Wiretap Statute prohibits the interception and disclosure of wire, oral, or electronic communications, subject to certain exceptions.[3] 18 U.S.C. § 2511(1). One of the statute's primary purposes is to protect the privacy of wire and oral communications. *Bartnicki v. Vopper,* 532 U.S. 514, 523, 121 S.Ct. 1753, 149 L.Ed.2d 787 (2001). A person whose communication has been intercepted or disclosed may bring a civil action to recover: (1) equitable relief; (2) actual or statutory damages; (3) punitive damages; and (4) litigation costs and attorneys' fees. *See* 18 U.S.C. § 2520(a); *see also Williams v. Poulos,* 11 F.3d 271, 274 n. 5 (1st Cir.1993). "[T]he legality of an interception is determined by the purpose for which the inter-

ception is made." *United States v. Underhill,* 813 F.2d 105, 110 (6th Cir.1987). The statutory scheme includes the following exception:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

*Id.* § 2511(2)(d). The requisite consent may be given by either party to the communication, and it is not necessary that the other party agree to the interception. *Gilday v. Dubois,* 124 F.3d 277, 296 (1st Cir. 1997). In our Opinion and Order, we found that Defendants were under the exception's protective ambit.

■ Thus, to succeed under the Federal Wiretap Statute, a plaintiff must demonstrate that the defendants acted with the purpose of committing a criminal or tortious act other than the recording of the communication itself. *See Boddie,* 731 F.2d at 339; *Betancourt v. Nippy, Inc.,* 137 F.Supp.2d 27, 32 n. 5 (D.P.R.2001); *see also Stamatiou v. United States Gypsum Co.,* 400 F.Supp. 431, 436 n. 3 (N.D.Ill. 1975). Although section 2511(2)(d) speaks only of interception, not of disclosure or use, of a communication, a disclosure or use of the contents of any intercepted communication is only unlawful if the person

---

**3.** The statute reads: "Except as otherwise specifically provided in this chapter any person who-(a) intentionally intercepts ... or procures any other person to intercept ... any wire, oral, or electronic communication" is subject to fines, imprisonment, or lawsuits. 18 U.S.C. § 2511(1)(a). The statute also prohibits persons from "intentionally disclos[ing]

... to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." *Id.* at § 2511(1)(c).

knows or has reason to know that the interception was illegal. *See* 18 U.S .C. § 2511(1)(c)-(d). Where a party to the communication intercepts the communication or gives consent to such interception, the recording is unlawful only if it is done with a criminal or tortious purpose. *Id.* § 2511(2)(d). "The purpose of the use and disclosure proscriptions is to reinforce the interception proscription by 'denying the wrongdoer the fruits of his conduct,' and by eliminating the demand for those fruits by third parties." *Peavy v. WFAA–TV, Inc.,* 221 F.3d 158, 191 (5th Cir.2000). If the interception itself was not unlawful, then the subsequent use or disclosure of intercepted information is not unlawful. *Betancourt,* 137 F.Supp.2d at 31–32. As we explained in our Opinion and Order, the lawfulness of Defendants' use and disclosure of information gained through the interception hinges on whether they intercepted the communication for the purpose of committing a criminal or tortious act. Since the Federal Wiretap Statute requires Plaintiff to demonstrate that Defendants operated with a purpose to commit a tortious or criminal act other than the interception itself, *see Boddie,* 731 F.2d at 339; *Betancourt,* 137 F.Supp.2d at 32 n. 5, the fact that Defendants may have violated

provisions in the Puerto Rico Constitution and Criminal Code which bar wiretapping or interception does not establish a criminal or tortious "purpose" within the meaning of the federal statute.[4]

■ Plaintiff proffers nothing to support his claims other than a summary of the averments for liabilities for the underlying torts and his assertion that the issue of Defendants' intent is preserved for a jury. While issues of intent and motive are generally preserved for a jury, the existence of a legal claim which incorporates a question of intent does not shield a plaintiff from summary judgment. The First Circuit has held that summary judgment is appropriate even where questions of intent are presented if the non-moving party "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Feliciano de la Cruz v. El Conquistador Resort and Country Club,* 218 F.3d 1, 5 (1st Cir.2000).

Here, Plaintiff offers no evidentiary support for the assertion that Defendants recorded the telephone conversation for the purpose of committing a tort, which, as the statute indicates, is the proper focus of inquiry in a § 2511 claim. 18 U.S.C. § 2511(2)(d).[5] Even if Defendants were

---

**4.** Plaintiff's arguments as to the preemptive effect of the Federal Wiretap Statute are of no moment. *Docket Document No. 202.* The fact that state laws may independently prohibit a greater scope of electronic communications suggests that a plaintiff has an independent cause of action under the Puerto Rico statutes and the Puerto Rico Constitution. To succeed under the Federal Wiretap Statute, however, Plaintiff must show a tortious or criminal intent independent of the recording itself. In other words, Plaintiff may not use more proscriptive state statutes as his "purpose." *Stamatiou v. U.S. Gypsum Co.,* 400 F.Supp. 431, 436 n. 3 (N.D.Ill.1975), aff. mem. *Stamatiou v. U.S. Gypsum Co.,* 534 F.2d 330 (7th Cir.1976). We note that, even if Plaintiff were able to use the Puerto Rico statutes and Constitution as a basis for his

tortious or criminal "purpose" claim, it is not clear that Defendants recorded the conversation with the "purpose" of violating the state wiretap laws. Further, Plaintiff has not shown, nor is it clear from a review of the pertinent caselaw, that Defendants have violated any state laws. *See Pueblo v. Colon Rafucci,* 139 D.P.R. 959, 964–65 (1996), *Pueblo v. De Leon Martinez,* 132 D.P.R. 746, 747–49 (1993).

**5.** Plaintiff's assertions of FCC violations will not provide a basis for his allegations of tortious or criminal purpose. *See Boddie,* 731 F.2d at 339 (finding that a violation of FCC regulations could not be used at trial as evidence of tortious or criminal purpose). We note that a violation of 37 C.F.R. § 73.1206 occurs when "the violator knew that it was

found liable for any of the Puerto Rico state laws, the question is not whether they are ultimately liable for conduct found to be tortious, but whether, at the time the recording took place, they recorded the conversation with the express intent of committing a tort. *Desnick v. American Broadcasting Companies, Inc.*, 44 F.3d 1345, 1353 (7th Cir.1995)(finding that "the critical question under Section 2511(2)(d) is why the communication was intercepted, not how the recording was ultimately used.").

This distinction is significant, for without it the media could be held liable for undercover reporting under § 2511 even when its sole intent was to gather news. Such a result would appear to be contrary to the legislative intent behind the 1986 amendment to § 2511. As the legislative history of the Federal Wiretap Statute makes clear, Congress intended to protect a party to a communication from liability for intercepting that communication unless by intercepting the communication, he or she is violating another law. According to the Senate report:

> Under current Federal law it is permissible for one party to consent to the interception of a conversation unless that interception is for illegal, tortious or other injurious purposes such as blackmail. In numerous court cases the term "other injurious purposes" has been misconstrued. Most troubling of these cases have been attempts by parties to chill the exercise of first amendment rights through the use of civil remedies under this chapter. For example, in *Boddie v. American Broadcasting Co.*, 731 F.2d 333 (6th Cir.1984), the plaintiff, whose conversations were recorded by a journalist, sued. Despite the consent of the reporter who was a party to the conversation, the plaintiff claimed that the recording of the conversation was illegal because it was done for an improper purpose, to embarrass her.... [I]t is clear from the facts of the case that the term "improper purpose" is overly broad and vague. The court's opinion suggests that if the network intended to cause "insult and injury" to plaintiff Boddie, she might be entitled to recover. This interpretation of the statute places a stumbling block in the path of even the most scrupulous journalist. Many news stories have been brought to light by recording a conversation with the consent of only one of the parties involved—often the journalist himself. Many news stories are embarrassing to someone. The present wording of section 2511(2)(d) not only provides such a person with a right to bring suit, but it also makes the actions of the journalist a potential criminal offense under section 2511, even if the interception was made in the ordinary course of responsible newsgathering activities and not for the purpose of committing a criminal act or a tort. Such a threat is inconsistent with the guarantees of the first amendment. Insomuch as [this statute] continues to prohibit interceptions made for the purpose of committing either a crime or a tort (including defamation), the public will be afforded ample protection against improper or unscrupulous interception.

S.Rep. No. 541, 99th Cong., 2d Sess. 17 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3571–72 ("Senate Report").

Thus, in *Russell v. American Broadcasting Co., Inc.*,1995 WL 330920 (N.D.Ill.

---

taking the action in question, irrespective of any intent to violate the Commission's rules." *Docket Document No. 212, Exh. 2.* Thus, the

violation of the FCC regulation, by its own terms, does not include a determination of purpose or intent.

1995), the court observed that "the critical question under section 2511(2)(d) is why the communication was intercepted, not how the recording was ultimately used." *Id.* at \*4. Finding that the defendants' intent in recording an undercover report was "to expose sanitation problems in the commercial fish industry," the court held that "it is clear that defendants did not intercept and record plaintiff's conversations for the purpose of committing a crime or tort." *Id.* The Seventh Circuit has similarly recognized that the proper inquiry is not whether a defendant ultimately committed a tort, but whether the recording was made with the specific purpose of committing a tort. *Desnick,* 44 F.3d at 1353. In *Desnick,* the court affirmed the lower court's dismissal of the § 2511(2)(d) claim, concluding:

> Maybe the program as it was eventually broadcast was tortious, for we have said that the defamation count was dismissed prematurely. But there is no suggestion that the defendants sent the testers into the Wisconsin and Illinois offices for the purposes of defaming the plaintiffs by charging tampering with the glare machine.

*Id.*

As such, while the plaintiff may have had an independent state law claim for defamation, the plaintiff could not tether his Federal Wiretap Statute claim of "purpose" to the existence of the state law violation unless the plaintiff could prove the requisite intent to defame. Absent corroborative proof of that "purpose," the Seventh Circuit declined to craft a Federal Wiretap Statute claim.

Finally, in a decision affirmed by the Ninth Circuit, a Montana district court refused to hold Cable News Network ("CNN") liable for secretly filming an investigative search of plaintiffs' property conducted by law enforcement agents who had consented to CNN's presence. *Berger v. Cable News Network, Inc.,* 1996 WL 390528 (D.Mont.), aff'd, *Berger,* 129 F.3d at 516. The district court reached this conclusion "because [it did] not find that defendants made the recordings for the purpose of committing a crime or tortious act. Instead, the recordings were made for the purpose of producing a news story and for the defendants' commercial gain." *Berger,* 1996 WL 390528 at \*3; aff'd, *Berger,* 129 F.3d at 516 ("we hold the media appellees not liable under the Federal Wiretap Act"); *see also Deteresa,* 121 F.3d at 467 (upholding summary judgment on an eavesdropping claim on the grounds that the plaintiff had failed to establish that the defendants had taped the conversation at issue "or the specific purpose" of committing the torts alleged).

Similarly, in the case at bar, after extensive discovery, comprising numerous depositions, Plaintiff has yet to flesh out his theories of "purpose." Plaintiff reiterates his state law causes of action, yet fails to proffer any evidence of an ulterior purpose. Plaintiff has offered no convincing evidence or arguments explaining why Defendant Ojeda would have any reason to record the meeting with Plaintiff other than to gain information for his broadcast. Without more, Plaintiff cannot prevail on his § 2511 claim.

Because our jurisdiction was premised on Plaintiff's Federal Wiretap Act claim, we decline to entertain Plaintiff's supplemental claims under local law. *See* 28 U.S.C. § 1367(c)(3); *see also Deniz v. Municipality of Guaynabo,* 285 F.3d 142, 150 (1st Cir.2002); *Serapión v. Martínez,* 119 F.3d 982, 993 (1st Cir.1997).

## IV.

### CONCLUSION

In accordance with the foregoing, this court GRANTS Defendants' summary

judgment motion. Judgment to enter accordingly.

**IT IS SO ORDERED.**