At San Juan, Puerto Rico, this 17th day of February, 2012.

Rodrigo **CAMPUZANO**, Plaintiff

v.

**UNITED STATES of America,** **Defendant.**

**Civil No. 10–1392CCC.**

United States District Court, D. Puerto Rico.

Sept. 30, 2013.

Rodrigo Campuzano, Philipsburg, PA, pro se.

Nelson J. Perez–Sosa, U.S. Attorney's Office, San Juan, PR, for Defendant.

**ORDER**

CARMEN CONSUELO CEREZO, District Judge.

Having considered the Motion to Vacate, Set Aside, and/or Correct Sentence Pursuant to 28 U.S.C. § 2255 filed by Rodrigo Campuzano (Campuzano) (**docket entry 1**), the United States' Response in Opposition

(docket entry 7), the Report and Recommendation (R & R) issued by U.S. Magistrate–Judge Justo Arenas on August 22, 2013 (**docket entry 19**) and the Objections to said R & R filed by petitioner Campuzano on September 30, 2013 (docket entry 22), said Report and Recommendation is APPROVED and ADOPTED and Campuzano's 28 U.S.C. § 2255 Petition is DENIED and ORDERED DISMISSED in its entirety. Judgment shall be entered accordingly.

SO ORDERED.

### *MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION*

JUSTO ARENAS, United States Magistrate Judge.

### A. PROCEDURAL BACKGROUND

On July 24, 2001, a grand jury sitting in Puerto Rico returned an indictment charging petitioner Rodrigo Campusano[1] and two other defendants, Jaime Pinillos–Prieto ("Pinillos") and Nolgie Rodriguez–Zamot (at times referred to as Rodriguez–Zamo) with drug offenses resulting from a DEA directed "reverse sting operation." Petitioner was charged in the first count in that, from on about early July 2001 up to and including July 11, 2001, in the District of Puerto Rico, petitioner and the co-defendants did knowingly, wilfully, intentionally and unlawfully conspire, confederate, and agree together and with each other and with diverse other persons known and unknown to the Grand Jury, to knowingly, intentionally and unlawfully possess with intent to distribute and distribute in excess

---

1. Petitioner's name in the heading, first sentence and in parts of the petition reads Campusano, although court documents generally read Campusano, and even Campuzano, which petitioner himself also uses, as in his latest correspondence informing that the Limestone County Detention Facility in Texas where he is housed is closing and his destination is unknown. I will use the normative spelling of Campusano for purposes of uniformity.

of five kilograms or more of cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of 21 U.S.C. § 846. (Crim. No. 01–520, Docket No. 10). Count Two of the indictment charged the defendants, aiding and abetting each other, with knowingly, intentionally, and unlawfully attempting to possess with intent to distribute in excess of five kilograms of cocaine, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

At the arraignment held before me on July 27, 2001, the three defendants entered not guilty pleas. Informal discovery, a very active motion practice and plea negotiations followed, these up to one year before trial. Those plea negotiations ended in late September, 2002 without bearing fruit.

## B. TRIAL

On October 17, 2002, the jury trial commenced and petitioner, represented by attorney Lydia Lizarribar–Masini, Esq., was convicted on October 25, 2002. The other two defendants were also convicted. The trial arena may be summarized as the uniform testimonies of two cooperating individuals and Colombian nationals, Nelson Rodriguez, known as "Rafa" in the investigation, and Nataya Posada, known as "Princesa" in the investigation, and a Puerto Rico law enforcement officer, Anthony Toro Zambrana, Special Agent with the Special Investigations Bureau of the Puerto Rico Department of Justice, against the testimonies of the three defendants, as well as the grandmother and uncle of one of the co-defendants, Nolgie Rodriguez–Zamot, and an employee of a car rental company, whose testimony was related to a car rental by co-defendant Rodriguez–Zamot. The defendants each testified offering innocent, interwoven explanations for the few meetings with the government agents, also including a family visit, sightseeing, and dealing in computers but not in narcotic drugs. *United States v. Campusano*, 556 F.3d 36, 41 (1st Cir. 2009); *United States v. Pinillos–Prieto*, 419 F.3d 61, 66 (1st Cir.), *cert. denied sub nom. Rodriguez–Zamot v. United States*, 546 U.S. 1070, 126 S.Ct. 817, 163 L.Ed.2d 643 (2005); *United States v. Pinillos*, 2007 WL 1341228 (May 3, 2007).

Petitioner was sentence on March 26, 2003 to 235 months imprisonment on each count, to be served concurrently with each other. (Crim. No. 01–520, Docket No. 237).[2] A notice of appeal was filed on the same date. (Crim. No. 01–520, Docket No. 240). Petitioner's conviction was affirmed on August 17, 2005. (Crim. No. 01–520, Docket No. 295). However, the case was remanded for re-sentencing in light of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) which was decided seven months earlier. Counsel Lizarribar–Masini was relieved from legal representation of petitioner on November 3, 2005, and was then replaced by attorney Jose R. Olmo–Rodriguez, who continued to represent petitioner until relieved on March 22, 2006. (Crim. No. 01–520, Docket 342). On March 27, 2006, attorney Benito Rodriguez–Masso was appointed to represent petitioner. The appointment ended on July 12, 2006.

## C. APPEAL & RE–SENTENCING

The appellants argued the insufficiency of evidence to sustain the convictions since they were dealing in computers and laptops and not controlled substances. The appeals court noted that notwithstanding

---

**2.** Co-defendant Pinillos–Prieto received concurrent sentences of 235 months imprisonment while co-defendant Rodriguez–Zamot, who had prior drug convictions, then received concurrent sentences of 360 months imprisonment.

the defense positions, the words related to computers were code words as described by two of the government witnesses. Lack of being able to reach an agreement was also raised and dispatched. This issue was raised by petitioner in particular. Only the sentencing issue, preserved by all defendants was deemed to have merit and thus the remand. All of the defendants protested being held accountable for 100 kilos of cocaine since they were not reasonably capable of purchasing that amount of cocaine due to the lack of money to purchase anywhere near the quantities of cocaine alleged. *United States v. Pinillos–Prieto,* 419 F.3d at 66. On this first appeal, petitioner was represented by Stephen J. Golembe, Esq.

On May 9, 2007, petitioner was re-sentenced to another term of 235 months imprisonment. He also received a term of supervised release term of ten years. (Crim. No., 01–520, Docket Nos. 421, 423). Petitioner filed a notice of appeal on May 14, 2007. (Crim. No. 01–520, Docket No. 422). The sentence was affirmed on February 13, 2009. *United States v. Campusano, supra.* A petition for a writ of certiorari was denied on June 15, 2009. *Campusano v. United States,* 557 U.S. 912, 129 S.Ct. 2809, 174 L.Ed.2d 305 (2009). On this second appeal, petitioner was represented by Johnny Rivera–Gonzalez, Esq. who assumed legal representation on July 12, 2006. (Crim. No. 01–520, Docket No. 375). This was the last of the four attorneys to represent petitioner at the trial level.

## D. COLLATERAL REVIEW

This matter is before the court on timely motion to vacate, set aside or remand sentence filed by petitioner Rodrigo Campusano on May 12, 2010. (Docket No. 1). Petitioner presses before the court thirteen mostly intertwined grounds for vacating his sentence in a comprehensive 46–page motion and memorandum of law. He also engages in a recital of pretrial proceedings, pretrial negotiations, and the evidence presented at trial, as well as complaints about his trial, sentencing and appellate counsel. Ultimately he seeks an evidentiary hearing since many of his allegations concern matters that do not appear in the record.

The United States filed a 26–page response in opposition to petitioner's motion on August 3, 2010. (Docket No. 7). It argues that some issues lack merit, others were not raised on appeal and therefore are foreclosed on collateral review, and yet others were disposed of on direct appeal. A thorough 37–page reply to the response was filed on September 24, 2010. (Docket No. 10). Petitioner further expanded the record on December 20, 2010. (Docket No. 11), and supplemented the 2255 motion on October 12, 2012. (Docket No. 13).

█ I will be addressing *ad seriatim* the interwoven but well thought issues raised by petitioner. Because petitioner appears *pro se,* his pleadings are considered more liberally, however inartfully or opaquely pleaded, than those penned and filed by an attorney. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Proverb v. O'Mara,* 2009 WL 368617 (D.N.H. Feb. 13, 2009). As in the case of co-defendant Pinillos, there is nothing inartful in these pleadings. Nevertheless, having reviewed the record, and having considered the several attested pleadings of petitioner, as well as the arguments of the parties and for the reasons set forth below, I disagree with petitioner's arguments and recommend that petitioner Rodrigo Campusano's motion to vacate, set aside, or correct sentence be DENIED without evidentiary hearing.

DISCUSSION

Under section 28 U.S.C. § 2255, a federal prisoner may move for post conviction relief if:

the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack....

28 U.S.C. § 2255; *Hill v. United States,* 368 U.S. 424, 426–27, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *David v. United States,* 134 F.3d 470, 474 (1st Cir.1998).

■ It is well settled that the Sixth Amendment right to counsel guarantees effective counsel. *See Strickland v. Washington,* 466 U.S. 668, 686–87, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Ortiz,* 146 F.3d 25, 27 (1st Cir.1998). Nevertheless, petitioner bears a "very heavy burden" in his attempt to have his sentence vacated premised on an ineffective assistance of counsel claim. *See Argencourt v. United States,* 78 F.3d 14, 16 (1st Cir.1996); *Lema v. United States,* 987 F.2d 48, 51 (1st Cir.1993). This is particularly true in this circuit where a lawyer's performance is deficient under *Strickland* "... only where, given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." *United States v. Rodriguez,* 675 F.3d 48, 56 (1st Cir.2012), quoting *Tevlin v. Spencer,* 621 F.3d 59, 66 (1st Cir.2010), which in turn quotes *Knight v. Spencer,* 447 F.3d 6, 15 (1st Cir.2006).

■ The United States Supreme Court has developed a two-pronged test to determine whether a criminal defendant was denied his constitutionally guaranteed effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Pursuant to the test established in *Strickland,* petition-

er Campusano must first establish that his counsel in the criminal proceedings was deficient in that the quality of legal representation fell below an objective standard of reasonableness. *See id.* at 688, 104 S.Ct. 2052; *Rosenthal v. O'Brien,* 713 F.3d 676, 685 (1st Cir.2013). In order to satisfy the first-prong of the aforementioned test, petitioner "must show that 'in light of all the circumstances, the identified acts or omissions [allegedly made by his trial attorney] were outside the wide range of professionally competent assistance.'" *Tejeda v. Dubois,* 142 F.3d 18, 22 (1st Cir.1998) (citing *Strickland v. Washington,* 466 U.S. at 690, 104 S.Ct. 2052). Petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Smullen v. United States,* 94 F.3d 20, 23 (1st Cir.1996) (citing *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. 2052). Finally, a court must review counsel's actions deferentially, and should make every effort "to eliminate the distorting effects of hindsight." *Argencourt v. United States,* 78 F.3d at 16 (citing, *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. 2052); *see also Burger v. Kemp,* 483 U.S. 776, 789, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987).

■ The second prong of the test, "[t]he 'prejudice' element of an ineffective assistance [of counsel] claim[,] also presents a high hurdle. 'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Argencourt v. United States,* 78 F.3d at 16 (citing *Strickland v. Washington,* 466 U.S. at 691, 104 S.Ct. 2052). Thus, petitioner must affirmatively "prove that there is a reasonable probability that, but for [his] counsel's errors, the result of the proceeding would have been different." *Knight v. United States,* 37

F.3d 769, 774 (1st Cir.1994) (citing *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. 2052). That is, if petitioner succeeds in showing deficiencies in his legal representation, then he must conclusively establish that said deficiencies operated a real prejudice against him in the criminal proceedings. *See id.* at 694, 104 S.Ct. 2052.

▇▇ "In all criminal prosecutions, the accused shall enjoy the right to ... the Assistance of Counsel for his defence." U.S. Const. amend. 6. "[T]he 'Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.'" *Sleeper v. Spencer*, 510 F.3d 32, 38 (1st Cir.2007) (quoting *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)). As to the two part test for constitutionally ineffective assistance of counsel set forth in the *Strickland* case, petitioner bears the burden of proof for both elements of the test. *See Cirilo–Muñoz v. United States*, 404 F.3d 527, 530 (1st Cir.2005) (citing *Scarpa v. Dubois*, 38 F.3d 1, 8–9 (1st Cir. 1994)). There is no doubt that *Strickland* also applies to representation outside of the trial setting, which would include sentence and appeal. *See Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Bonneau v. United States*, 961 F.2d 17, 20–22 (1st Cir.1992); *United States v. Tajeddini*, 945 F.2d 458, 468–69 (1st Cir.1991), *abrogated on other grounds by Roe v. Flores–Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). *A fortiori*, the right to effective assistance of counsel applies to the plea bargaining process. *See Missouri v. Frye*, 566 U.S. ——, 132 S.Ct. 1399, 1412–1413, 182 L.Ed.2d 379 (2012). Indeed, the "Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Id.* at 1405, quoting *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S.Ct. 2079, 173 L.Ed.2d 955

(2009), which in turn quotes *United States v. Wade*, 388 U.S. 218, 227–228, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

▇▇ "'[J]udicial scrutiny of counsel's performance must be highly deferential,' and 'every effort [should] be made to eliminate the distorting effects of hindsight.'" *Argencourt v. United States*, 78 F.3d at 16, quoting *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. 2052; *see United States v. Valerio*, 676 F.3d 237, 246 (1st Cir.2012). The test includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Smullen v. United States*, 94 F.3d at 23 (quoting *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. 2052).

▇▇ The second element of the Strickland test "also presents a high hurdle. 'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Argencourt v. United States*, 78 F.3d at 16 (quoting *Strickland v. Washington*, 466 U.S. at 691, 104 S.Ct. 2052). There must exist a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Dugas v. Coplan*, 428 F.3d 317, 334 (1st Cir.2005) (quoting *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. 2052). "[A] reasonable probability is one 'sufficient to undermine confidence in the outcome.'" *González–Soberal v. United States*, 244 F.3d 273, 278 (1st Cir.2001) (quoting *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. 2052).

▇▇ Assuming that counsels' representation fell below an objective standard of reasonableness, petitioner would still have to prove that they resulted in prejudice to his case. *See Owens v. United States*, 483

F.3d 48, 63 (1st Cir.2007) (quoting *Strickland v. Washington*, 466 U.S. at 687–88, 104 S.Ct. 2052). For our purposes, it makes no difference in which order the *Strickland* test is applied. *See Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012).

 Within a habeas corpus case the decision to order an evidentiary hearing is left up to the discretion of the court. A court may deny an evidentiary hearing when "(1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations 'need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently incredible.' ' " *David v. United States*, 134 F.3d at 477 (quoting *United States v. McGill*, 11 F.3d 223, 225–26 (1st Cir.1993)); *Shraiar v. United States*, 736 F.2d 817, 818 (1st Cir. 1984)

 Finally, collateral attack on nonconstitutional and nonjurisdictional "claims are properly brought under section 2255 only if the claimed error is 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.' " *Knight v. United States*, 37 F.3d at 772, quoting *Hill v. United States*, 368 U.S. at 428, 82 S.Ct. 468.

With these often announced and much repeated standards in mind, I consider the several grounds upon which petitioner relies to attack the legality of his conviction and sentence.

**3.** While not common, the joint defense agreement and resulting privilege are not unknown in this district. *See Ovalle Marquez v. United States*, 258 F.Supp.2d 7, 14–15 (D.P.R.2003);

## FIRST GROUND: ACTUAL CONFLICT OF INTEREST

I. Campusano was denied his Sixth Amendment right based upon an actual conflict of interest that adversely affected counsel's performance; and based upon prejudicial ineffective assistance.

Petitioner argues his trial attorney was a witness to exculpatory statements made by co-defendant Pinillos, and because Pinillos' attorney subsequently argued against severance, counsel's representation was burdened by an actual conflict of interest. (Docket No. 1 at 18). Because of a joint defense agreement [3] and the inherent conflict of interest created by such agreements, petitioner charges counsel with having failed him due to such an actual conflict of interest. He was arguably prejudiced by counsel's not having disqualified herself in order to be able to testify at trial on his behalf by claiming his innocence, contrary to Pinillos' previous statement to her where he had admitted his guilt. (Docket No. 1 at 20).

The United States responds to the conflict issue by arguing that the court put to rest any conflict of interest issue by denying the motion for severance filed by petitioner and co-defendant Rodriguez–Zamot. (Crim. No. 01–520, Docket No. 125). The court noted that the statements of Pinillos were not substantially exculpatory, contrary to the position taken by Pinillos, and that a separate trial was not necessary. The court concluded that Pinillos' statements were privileged in any event under the circumstances. Given this scenario, the United States notes that counsel did not labor under an actual conflict of issue

*Santiago v. United States*, 219 F.Supp.2d 186, 194–95 (D.P.R.2002), vacated in part by *Rivera–Santiago v. United States*, 102 Fed.Appx. 177 (1st Cir.2004).

because she was not forced to make choices advancing other interests to the detriment of her client. *Stoia v. United States,* 22 F.3d 766, 771 (7th Cir.1994) (Docket No. 7 at 5–6); *see United States v. Lachman,* 521 F.3d 12, 20–21 (1st Cir. 2008); *United States v. Soldevila–Lopez,* 17 F.3d 480, 486 (1st Cir.1994); *United States v. Foster,* 469 F.2d 1, 4–5 (1st Cir. 1972).

In petitioner's reply to the response in opposition filed by the government, he emphasizes the joint defense agreement which was prejudicial to his interests because it prohibited defense counsel from using statements of Pinillos to petitioner's benefit. He argues that he was further prejudiced by counsel's failure to cross-examine Pinillos as to his earlier admission of guilt, and that counsel made him testify although he did not want to, since counsel could not elicit the statements of his innocence from Pinillos. (Docket No. 10 at 4, ¶¶ 1, 4, 6). Petitioner lists the exculpatory statements which would have favored him at trial. Petitioner's reply is a repetitive and expanded version of his original motion.

▮▮▮▮ Few commitments from an attorney to a client are more important than " 'a duty of loyalty, a duty to avoid conflicts of interest.' " *United States v. Colón–Torres,* 382 F.3d 76, 88 (1st Cir.2004) (quoting *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. 2052; *see Carey v. United States,* 50 F.3d 1097, 1100–01 (1st Cir.1995)). The short answer to the conflict of interest issue is that the entire matter of the arguably exculpatory evidence and how it came about was presented to the district court which ruled against petitioner on the motion for severance,

giving detailed reasons for the denial. That is, the court was clearly aware of the factual dispute which petitioner now argues burdened counsel with an actual conflict of interest. That counsel failed in the attempt to sever the case for the purpose of presenting the testimony of Pinillos who wished to exculpate the other two defendants as well as himself, and failed to disqualify herself so that she could testify in favor of petitioner, does not trigger the right to the extraordinary writ, nor to a finding of conflict of interest nor inadequate assistance of counsel. I explain.

On June 4, 2002, petitioner and co-defendant Rodriguez–Zamot moved for severance explaining that a meeting had been held eight months earlier, on October 1, 2001, at the Metropolitan Detention Center after all parties had agreed to meet in order to determine a possible common defense for trial. (Crim. No. 01–520, Docket No. 112 at 1–2). At the meeting, co-defendant Pinillos stated that he wanted to testify in favor of the other two, being that his testimony would be substantially exculpatory. He also wanted to speak to the prosecutor. The motion for severance was opposed by co-defendant Pinillos on August 29, 2002, stating that the above stated assertions are incorrect. (Crim. No. 01–520, Docket No. 122). Co-defendant Pinillos stresses that the gist of his statement to the other defense attorneys was that the other co-defendants were as innocent as he was, and that no crime was committed as alleged. Co-defendant Pinillos stated that he would not testify as to the proffer made to the court by the co-defendants. As I have said, the court entered an order denying the motion for severance, detailing the reasons for the denial.[4] The matter of

---

**4.** The court noted in part, "Given the clear position of Mr. Pinillos on what he would testify and what he would not testify at trial, he is correct that the same does not amount

to substantial exculpatory testimony nor would his proffered testimony require a separate trial." Because the statements were made for the purpose of possibly having a

the denial of the motion for severance was not raised at the court of appeals. Furthermore, notwithstanding the statement that counsel entertained a conflict in her duty of loyalty to him, there was never a point where defense counsel had to withdraw from representation from an actual or threatened conflict of interest. Petitioner argues that counsel entered into the conflict upon taking part in a joint defense agreement. Notwithstanding the scarcity of joint defense agreements in this circuit, joint defense agreements are generally valid and serve a valid purpose. Indeed, the three defendants presented their interlocked and innocent versions of the occurrences of early July 2001, and also hoped at one time to obtain identical and light sentences, as I discuss below. Contrary to petitioner's statement that he lost the right to place the blame on Pinillos, he had the opportunity to exercise that right at trial, where everyone testified as to their innocence, and which is consistent with co-defendant Pinillos' representation in opposing the motion for severance. Counsel's pursuit of petitioner's innocence at trial was not hindered by any conflict of interest. *See e.g. Mickens v. Taylor*, 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002); *Reyes–Vejerano v. United States*, 276 F.3d 94, 97–98 (1st Cir.2002).

 The joint defense agreement has a purpose which makes the trial process more predictable and reduces the chances of defending a case against a co-defendant. In that respect, the mere existence of a joint defense agreement is not prejudicial to petitioner's interest. In-

deed, petitioner had asked for a consolidation of sentencing hearings upon re-sentencing in order to promote sentencing uniformity and avoid sentencing disparity, and because similar objections were expected to be raised. (Crim. No. 01–520, Docket No. 407, dated April 18, 2007). Under the totality of the circumstances presented to the trial court and presented by petitioner on collateral review, I find no actual conflict of interest and no potential conflict of interest which would require the court to exercise its discretion in favor of counsel's disqualification. *See generally United States v. Colon–Torres*, 382 F.3d at 88–89; *Alicea–Torres v. United States*, 455 F.Supp.2d 32, 56 (D.P.R.2006); *cf. Hughes v. United States*, 241 F.Supp.2d 148, 154–55 (D.R.I.2003). That is, the record does not reflect that the adequacy of petitioner's representation, nor the performance of counsel, was affected by any actual conflict of interest. *See e.g. Yeboah–Sefah v. Ficco*, 556 F.3d 53, 72–73 (1st Cir.2009); [5] *cf. Cuyler v. Sullivan*, 446 U.S. 335, 349–50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *United States v. Fahey*, 769 F.2d 829, 834 (1st Cir.1985).

## SECOND GROUND: DENIAL OF USE OF PINILLOS' STATEMENT

II. Counsel rendered prejudicial deficient performance when filing the motion for severance and by failing to inform the court that petitioner could not be denied his constitutional rights to use Pinillo's statements.

Petitioner argues that he has an unqualified right to present a defense and to

---

common defense at trial, they were determined protected as privileged communications. (Crim. No. 01–520, Docket No. 125).

**5.** The government argues that the issue of conflict was not raised at the trial, sentencing or appellate levels. (Docket No. 7 at 6). I do not reach the issue of waiver, since conflict of

interest claims are appropriately brought in a 2255 proceedings. *United States v. Hicks*, 531 F.3d 49, 55–56 (1st Cir.2008); *see United States v. LaPlante*, 714 F.3d 641, 648 (1st Cir.2013); *United States v. Sanchez–Badillo*, 540 F.3d 24, 33 (1st Cir.2008).

confront his accusers and that these rights were violated. Again, this matter is more than adequately addressed by defense counsel and the court gave the reasons why the statement of co-defendant Pinillos would not be allowed. Petitioner argues that counsel failed to object to the denial of the motion to sever trials. (Docket No. 1 at 25). As in the case of the joint defense triggered conflict of interest argument, the issue was not raised on appeal and it is clear that considering the nature of the testimony that was not forthcoming based on the court's ruling, it was not ineffective assistance of counsel not to raise the matter on appeal.

Rule 8 of the Federal Rules of Criminal Procedure permits joinder of offenses or defendants in the same indictment or information to promote judicial economy. *United States v. Josleyn,* 99 F.3d 1182, 1188 (1st Cir.1996). A trial judge has broad discretion to grant or deny severance of joined counts or defendants after balancing the interest in judicial economy against the risk of prejudice to the defendant or the government. *See, e.g., United States v. Magana,* 127 F.3d 1, 7 (1st Cir.1997). As is well known, generally, persons who "are indicted together should be tried together." *United States v. DeLeón,* 187 F.3d 60, 63 (1st Cir.1999) (quoting *United States v. O'Bryant,* 998 F.2d 21, 25 (1st Cir.1993)). For severance to be granted, a defendant "must demonstrate prejudice so pervasive that it would be likely to effect a miscarriage of justice." *United States v. DeLeón,* 187 F.3d at 63; *United States v. LiCausi,* 167 F.3d 36, 49 (1st Cir.1999) (defendant argues prejudice due to admission of evidence relating to crimes in which he was not involved); *United States v. Sabatino,* 943 F.2d 94, 96–97 (1st Cir.1991) (defendant argues prejudicial joinder because two main prosecution witnesses fail to mention her during their testimony.)

Petitioner has not presented any argument or evidence to meet the burden necessary to prove ineffective assistance of counsel in failing to follow through on a continuous mission to sever the trials. First, petitioner's claim is veiled as one of ineffective assistance of counsel, but is actually a protest aimed at the court's ruling. Second, even if petitioner properly claimed ineffective assistance of counsel, the benchmark for such a claim is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. at 686, 104 S.Ct. 2052. Petitioner has not provided any evidence to support a finding that the functioning of the adversarial process was undermined except to be dissatisfied with the arguable lack of force with which counsel sought the severance, and with failure to seek reconsideration upon the constitutional grounds raised by petition in this collateral attack. The grounds for denial were spelled out by the court. The matter was committed to the sound discretion of the trial judge. *See United States v. Fernandez–Hernandez,* 652 F.3d 56, 75 (1st Cir. 2011).

## THIRD GROUND: FAILURE TO ADEQUATELY JUSTIFY THE NEED FOR AN INVESTIGATOR AND PREPARE A DEFENSE

III. (a) Counsel rendered prejudicial deficient performance for failing to specify the reasons why an investigator was critically essential in Campusano's case; and for failing to prepare a defense.

(b) Campusano was constructively denied counsel by the court's denial of his attorney's motions for an investigator: in violation of his Sixth Amendment

right under *Cronic*[6] and Fifth Amendment right.

▮ The matter of the request for an investigator suffers the same fate as other matters that were resolved by the court and not preserved on appeal. The motion was denied by the court. (Crim. No. 01–520, Docket Nos. 97, 108). Counsel sought reconsideration and the court denied the motion for reconsideration. (Crim. No. 01–520, Docket Nos. 132, 150). Petitioner makes a proffer as to how counsel should have justified the use of an investigator. Strategy surrounded all the movements of defense counsel in this case and her not detailing the reasons why an investigator was sought does not amount to a Sixth Amendment violation. Indeed, counsel informed the court that a detailed ex-parte could be made as not to jeopardize the defense. The record reflects numerous requests for physical evidence and the sloth-like movements of the prosecution in handling those requests. Petitioner mentions the lack of compliance in his motion. What an investigator would have done that defense counsel did not do is a matter of speculation. Petitioner makes a lengthy proffer as to what the investigator would have found, basically supporting his theory that he is a hard-working law abiding man that came to Puerto Rico on a vacation, that petitioner was lending co-defendant Pinillos, who was paying for the trip, the money for the computers ($2,000), and that the money would be returned upon return to Miami and after Pinillos sold the computers. He also lists a number of witnesses, including character witnesses, who would have testified on his behalf.

The defense was a matter of strategy, just as petitioner's decision to testify on his own behalf and relate his innocence and ignorance of any criminal enterprise.

In *United States v. Mateos–Sanchez,* 864 F.2d 232, 239–40 (1st Cir.1988), the court considered the district court's denial of travel expenses for an investigator to interview witnesses, paid for under The Criminal Justice Act, 18 U.S.C. § 3006A(e)(1). *Cf. United States v. Durant,* 545 F.2d 823, 827 (2d Cir.1976) (fingerprint expert pivotal). No abuse of discretion was found in such denial, in a case reflecting some similarity with the proffer made by petitioner in this collateral attack.

▮ The list of witnesses proffered do not reflect the need for the appointment of an investigator, and their testimonies would not be incompatible with the clandestine world of drug trafficking. Furthermore, as I have stated, this matter was not raised on appeal and therefore incurs in procedural default. The subject is further discussed below in ground eleven of petitioner's motion.

Petitioner relies on *United States v. Cronic, supra* in arguing that the denial of the motion to appoint an investigator actually and constructively violated his right to counsel. (Docket No. 1 at 30). *Cronic* is an extreme case, and although the law of the land, the facts there do not meld easily with the facts in this case, starting with the experience of defense counsel. The analogy is therefore lost. In any event, the court did not abuse its discretion in denying the motion for an investigator under the circumstances. *See United States v. Canessa,* 644 F.2d 61, 64 (1st Cir.1981); *cf. Wiggins v. Smith,* 539 U.S. 510, 542–46, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); *Caldwell v. Mississippi,* 472 U.S. 320, 323 n. 1, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).

**6.** *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)

## FOURTH GROUND: OUTRAGEOUS PROSECUTORIAL MISCONDUCT

IV. Campusano's Due Process rights were violated by the government's outrageous misconduct in misleading defense and the court about the confidential informants authorization to act as authorized informants for the DEA: all in violation of *Brady, Giglio, Kyles,* and *Napue.*

 In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that, irrespective of good or bad faith, suppression by the prosecution of evidence favorable to a defendant who has requested it violates due process where such evidence is material to either guilt or punishment. *Brady* imposes an affirmative duty on the prosecution to produce at the appropriate time requested evidence that is materially favorable to the accused, either as direct or impeaching evidence. The obligation to disclose is measured by "the character of the evidence, not the character of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 220, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) (quoting *United States v. Agurs,* 427 U.S. 97, 110, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)); *see Strickler v. Greene,* 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Also, the government must reveal promises of leniency or immunity for its witnesses *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

 The duty to disclose favorable evidence is not absolute.

"We do not ... automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict....'" *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (quoting *United States v. Keogh,* 391 F.2d 138, 148 (2d Cir.1968)). [Instead,] "[a] finding of materiality of the evidence is required under *Brady.*" *Id.*

 The government replies to this attack on February 5, 2002 by referring to its own actions when it makes reference to certain consensually tape recordings made by a government informant. In that motion, the government cites 18 U.S.C. § 2511(2)(c). Rather than have engaged in outrageous misconduct as alleged by petitioner, the government's position is that it conducted business as usual, and that there was nothing out of the ordinary, particularly since the informant was authorized to record conversations, and that in any event, the recording was consensual, that is, the informant gave his consent to record conversations.

In *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Court elaborated a test for determining when undisclosed evidence is material for purposes of a *Brady* inquiry. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682, 105 S.Ct. 3375 (opinion of Blackmun, J.); *id.* at 685, 105 S.Ct. 3375 (White, J., concurring in part and concurring in judgment); *see also Kyles* [*v. Whitley*], 514 U.S. [419] at 433–435, 115 S.Ct. 1555, 131 L.Ed.2d 490 [ (1995) ] (endorsing *Bagley* test as the proper measure of materiality). This does not mean that a defendant must convince the court of the certainty of a different outcome. Instead, one proves a *Brady* violation "by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles,* 514 U.S. at 435, 115 S.Ct. 1555.

*United States v. Cunan,* 152 F.3d 29, 34 (1st Cir.1998).

 The Court stated in *Kyles v. Whitley, supra,* that four aspects of materiality under *Bagley* bear emphasis. First, favorable evidence is material, and constitutional error results from its suppression by the government if there is "reasonable probability" of a different result. *Strickler v. Greene,* 527 U.S. at 280, 119 S.Ct. 1936. Second, *Bagley* materiality is not a sufficiency of evidence test. A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convince, but that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. *Kyles v. Whitley,* 514 U.S. at 435, 115 S.Ct. 1555; *Strickler v. Greene,* 527 U.S. at 290, 119 S.Ct. 1936; *see United States v. Schneiderhan,* 404 F.3d 73, 78–79 (1st Cir. 2005). Third, once a constitutional error has been found, there is no need for further harmless error review. *Strickler v. Greene,* 527 U.S. at 290, 119 S.Ct. 1936. Fourth, the state's disclosure obligation turns on the cumulative effect of all the suppressed evidence favorable to the defense, not on the evidence considered item-by-item. The prosecution, which alone can know, what is undisclosed, has the responsibility to gauge the likely net effect of such evidence and make disclosure when the point of "reasonable probability" is reached. Thus, the individual prosecutor has a duty to learn of "any favorable evidence known to the others acting on the government's behalf of the government in the case, including the police." *Strickler v. Greene,* 527 U.S. at 275 n. 12, 119 S.Ct. 1936 (quoting *Kyles v. Whitley,* 514 U.S. at 437, 115 S.Ct. 1555).

Petitioner complains that the government did not disclose the lack of authorization of the cooperating informants to act as informants in contravention of DEA directives which required deactivation. The government uniformly argues that at all times related to the consensual recording of conversations with co-defendant Pinillos, CI Rodriguez was authorized to record such conversations.

 Petitioner charges counsel with ineffective assistance based on her violating his right to information related to the government informants, particularly CI Rodriguez, as announced in *Brady, Giglio, Kyles* and *Napue*[7]. Petitioner stresses in his memorandum that critical to counsel's being able to effectively cross-examine informant Rodriguez was the question of whether he was authorized to record the phone conversations at the time of the investigation of this case. (Docket No. 1 at 31). Petitioner notes that the authorization signed by the informant (DEA Form 473) is dated 1998 and was valid for one year per its own terms, that is, that he did not have a lifetime agreement to be a DEA informant as explained by one of the federal prosecutors handling the case. Furthermore, absolutely no information was provided in relation to the other cooperating individual.

The government counters the argument by clearly stating that the informant was explicitly authorized by the government to record the conversations. (Docket No. 7 at 10). Aside from the rote statements of the assistant United States attorney to the trial court, and the statement in the reply brief, any evidence of explicit contemporaneous authorization is missing in the record. But the government also argues that the fact that CI Rodriguez consented to

**7.** *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959) (promises of

consideration received by a witness must be truthfully provided to the jury).

the recording and was a party to the conversation is sufficient for purposes of using the recordings of the conversations as evidence in a federal prosecution.

Petitioner's reply focuses more on the government's failure to comply with exculpatory information and *Brady* material which had been requested much earlier by defense counsel. *Brady* violations are the grist of post-trial complaints related to careless or callous prosecutors. This attack is nothing less. The court was well aware that the government's lackluster compliance with its orders reached the pre-trial and trial levels and even at those stages, production was incomplete or lacking[8], as in the case of the female informant.[9]

As to this second informant who testified at trial, an issue is raised regarding her permission to enter the United States at will. The visa requirement for Nataya Posada to enter the United States is of no consequence in *Brady* terms and certainly does not qualify as an inducement, other than one to testify at trial, a common occurrence for foreign nationals who are government witnesses. That the defense did not have that information about her to "impeach" or attack her credibility is of no consequence to the defense. The female informant played a brief role in the reverse sting operation as Princesa, the owner of the purported load of cocaine. She testified as to the details of her immigration visa that provided for multiple entries into the United States. (Tr. T. Oct. 23, 2002, p. 9). She testified that she could come and go whenever she wanted and that she worked on other law enforcement cases. Immigration would put a limit on

the length of her visit, such as two or six or eight months. (Tr. T. Oct. 23, 2002, p. 10). In any event, counsel pursued information related to this informant and it was clear that the government failed to comply with the request at all. For example, petitioner moved for specific *Kyles* and *Brady* information on April 25, 2002 in a comprehensive, omnibus motion to that effect. (Crim. No. 01–520, Docket No. 83). The request included any preferential treatment, monies paid and financial reward. On April 29, 2002, the government was ordered to provide such information within 48 hours. (Crim. No. 01–520, Docket No. 87). The vacuum of information remained.

Nevertheless, the matter could have been raised on appeal and was not. If it was not, that would possibly have been poor performance by appellate counsel but not imputable to trial counsel. She emphasized at trial the lack of role of petitioner in any criminal enterprise. Counsel stressed on closing argument that informant Posada had seen petitioner on July 9, 2001, had no idea what petitioner was there for and that she never spoke to him. (Tr. T. Oct. 24, 2002, p. 62).

Reviewing the above scenario, it is clear that the court has to delve into a cause and prejudice analysis of appellate counsel's failure to raise the issue of authority. In this regard, the petition fails as to both *Strickland* factors since cause has not been shown why the matter was not raised on appeal when it could have been (since the arguable existence of a *Brady* violation was clearly known at trial). Also prejudice would have to be shown, and that is not shown, notwithstanding petitioner's el-

8. See Crim. No. 01–520, Docket No. 141, dated October 2, 2002, (Order related to *Kyles, Giglio, Brady, Jencks* and the government's noncompliance with previous court directives).

9. Nataya Posada, Colombian national and paid government informant, since September 2000. Her motivation is two-fold, money and patriotism as a citizen of the Republic of Colombia. (Tr. T. Oct. 22, 2002, p. 161–62).

egant choice of strong wording related to his right to relief.

Certainly it is apparent that a critical issue for the defense is whether the government informant was authorized to record conversations with co-defendant Pinillos–Prieto when the recordings were made. If the informant was so authorized, the inquiry stops there. If the informant was not so authorized, then the next step would be to determine if such recorded conversations can validly be used in a federal prosecution without violating some constitutional or statutory right, since such a violation might invite the conclusion of outrageous conduct or outrageous government misconduct. I begin with the statute upon which the government relies, part of the Omnibus Crime Control and Safe Streets Act of 1968.

Title 18 U.S.C. § 2511(2)(c) reads thus:

It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to the communication.

While there is no doubt that CI Nelson Rodriguez has given consent to have the communication intercepted, since he initiated such interception himself (as reflected in his recorded statement after each telephone call), the question is presented if he was authorized at the time the interceptions of Pinillos was undertaken. As in most Fourth Amendment arguments, petitioner must have standing to challenge the interception and such a challenge is supplied by the enabling statute itself. Certainly any statements of co-defendant Pinillos–Prieto which were recorded during and in furtherance of the charged conspiracy can be used against petitioner under Federal Rule of Evidence 801(d)(2)(E). *See United States v. Mangual–Garcia,* 505 F.3d 1, 7–8 (1st Cir.2007); *United States v. Lopez–Gutierrez,* 83 F.3d 1235, 1241 (10th Cir.1996). After the presentation of the government's case in chief, and before the motions for judgment of acquittal under Fed.R. Crim.P. 29, the court made a finding as to the existence of the conspiracy and the admission of co-defendant statements under Federal Rule of Evidence 801. Since the United States does not question petitioner's standing to challenge the authority of the interceptions, I will not consider the matter further.

In any event, petitioner raises the inadequate paper trail to reflect that any authorization for Nelson Rodriguez to record communications with a defendant was acquired after the recording was made. That I am aware, there is neither a constitutional nor statutory prohibition that would lead to the suppression of statements thus acquired. The next step in the sequence of authority is found in internal regulations of the DEA. But it is clear that an agency that violates its own regulations does not create either a constitutional right nor a statutory right by default. *See e.g. United States v. Caceres,* 440 U.S. 741, 744, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); *United States v. White,* 401 U.S. 745, 752, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971).

It is not at all clear that CI Rodriguez was acting under color of law when he recorded the conversations. He had been a paid DEA informant since 1985, having worked on numerous cases, and certainly expected to be paid for his work in this case.[10] The lack of altruistic patriotism or

---

**10.** CI Rodriguez testified that he had been a DEA informant for 17 years. He had never been arrested by any agency of the United States government. In Colombia, he was the head of the Intelligence and Counterintelli-

criminal subterfuge leads to the conclusion that CI Rodriguez was *de facto* acting as a government agent when he made the recordings. Therefore, there is neither a constitutional nor statutory violation of any of petitioner's rights. And administrative regulations in this case do not create a right beyond those of statutes, rights of which petitioner has none.[11] In that respect, another exception to the Federal Wiretap Act is clearly applicable.

Title 18 U.S.C. § 2511(2)(d) reads as follows:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortuous act in violation of the Constitution or laws of the United States or of any State.

CI Rodriguez made no interception for the purpose of committing any criminal or tortuous act in violation of the Constitution or laws of the United States or of any State. The Supremacy Clause resolves any issue of violating the Puerto Rico Constitution. CI Rodriguez's consent is clear. That consent validates his testimony as to the consensual nature of the recording of the tape referred to as N–2. *See e.g. United States v. Wright*, 573 F.2d 681, 684 (1st Cir.1978); *Vazquez–Santos v. El Mundo Broadcasting Corp.*, 283 F.Supp.2d 561, 566–67 (D.P.R.2003). But even the matter of authorization does not require the degree of formality that petitioner requires.

*See e.g. See United States v. Mangual–Garcia*, 505 F.3d at 8.

The entire matter of authorization was covered in the motion practice on the motion to suppress and was also addressed by the United States magistrate judge in her report and recommendation. Counsel did not incur in a Sixth Amendment violation by not revisiting the ruling. And the fact that the court ruling is correct foils any attempt to reach the prejudice prong of *Strickland*. Considering the information presented at trial, the explanations given by the two confidential informants as to why they assumed the roles in the reverse sting operation, and the lack of portent in the argument that neither was an authorized DEA informant in early July, 2001, leads to the conclusion that the information referred to by petitioner was not material under *Brady*. *Cf. Murray v. United States*, 704 F.3d 23, 30–32 (1st Cir.2013). Regardless of a defective DEA Form 473, Posada and Rodriguez were DEA informants during the sting and they were nothing else. They were not convicted felons, not illegal aliens, not cooperating co-defendants, not testifying under a grant of immunity, and not national security risks. *Cf. United States v. Blanco*, 392 F.3d 382, 390–95 (9th Cir.2004); *Valenzuela v. United States*, 286 F.3d 1223, 1230–33 (11th Cir.2002). It is self evident that the reverse sting operation in which two Colombian nationals participated did not result in outrageous government misconduct. As the court of appeals recently noted, "'[t]he banner of outrageous misconduct is often raised but seldom saluted.'" *United States v. Rivera–Garcia*, 527 Fed.Appx. 11, 15 (1st Cir.2013), citing *United States v,*

---

gence Section of Customs. (T. Tr. Oct. 21, 2002, pp. 92–94).

**11.** The cases cited by petitioner are generally cited in the Attorney General's Policy Regarding Disclosure of Exculpatory and Impeach-

ment Information in the United States Attorneys' Manual § 9–5.000. (new section 9–5.001) dated October 19, 2006). (Crim. No. 01–520, Docket No. 467–2).

*Santana*, 6 F.3d 1, 4 (1st Cir.1993). There is yet no salute.

## FIFTH GROUND: PLEA REJECTION

V. Counsel rendered Prejudicial deficient performance in failing to advise CAMPUSANO to accept the government's plea offer of 48 months; in failing to advise CAMPUSANO of the government's subsequent plea offer, in failing to advise CAMPUSANO that he could make any counteroffers, and in failing to advise Campusano that he could receive a possible sentence reduction if he cooperated.

Petitioner alleges that on September 20, 2002, the government made a final plea offer of 48 months, and that based on counsel's advice that he would receive a sentence of 78–97 months if convicted, he decided not to accept the plea offer. There is no evidence of a subsequent plea offer. The formal plea offer provided for a base offense level of 32, less three points for acceptance of responsibility, less two points for compliance with the safety valve provisions, less four points for minimal participation. A total offense level of 23 provided for a sentencing range of 46 to 57 months. (Docket No. 1 at 11). Petitioner was contemplating accepting the plea offer and ultimately did not, hoping to be sentenced in accordance with counsel's predictions if found guilty.

■ It is clear that if an attorney fails to communicate a formal offer, such a failure is deficient as a matter of law and satisfies the first prong of Strickland. *Missouri v. Frye*, 566 U.S. ——, 132 S.Ct. at 1408. The information before the court is that a final offer of 48 months was made to petitioner in September, 2002, less than a month prior to trial. The offer was discussed with defense counsel who made predictions if petitioner was found guilty

after trial. The predictions were studied but ultimately wrong. Regardless of any further offer other than the 48 month offer mentioned by petitioner, there is no evidence or information in relation to another subsequent formal offer, one made in writing.

■ "A defense attorney in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable." *Boria v. Keane*, 99 F.3d 492, 496 (2d Cir.1996), cited in *United States v. Gonzalez–Vazquez*, 219 F.3d 37, 42 (1st Cir.2000) (defendant instructed attorney to accept plea offer; sentenced to 37½ years, consecutive with a 2–year local sentence). The decision to plea guilty must ultimately be left to a client's wishes. *Boria v. Keane*, 99 F.3d at 496–97.

Petitioner accuses counsel of giving him misadvise and telling him that his sentence could be between 78 to 97 months if convicted. She never told him that it was in his best interest to accept the offer. At the same time, she knew that he was innocent and that he wanted a uniform sentence which was half of the final one offered. Petitioner also states that counsel never informed him of any subsequent offer, nor that he could make a counteroffer. He was never told that he could cooperate with the government and testify against Pinillos and possibly receive a sentence reduction. Had he known all of this, he would have pleaded guilty since he was already contemplating pleading guilty. (Docket No. 1 at 34).

■ "[T]he decision whether to plead guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case...." *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir.1998) (quoting *Boria v. Keane*, 99 F.3d at 496–97), cited in *Malpica–Garcia v. United States*, 2009 WL 2512425 (D.P.R.2009) at

*3. As the court noted therein, knowledge of sentencing exposures is crucial to the decision of whether to plead guilty. *See United States v. Day*, 969 F.2d 39, 43 (3rd Cir.1992), cited in *Malpica–Garcia v. United States*, supra; *Malpica–Garcia v. United States*, 2009 WL 1473906 (D.P.R. 2009) at *3.

 Given this scenario, and notwithstanding the government's failure to respond to the allegation at all, I cannot determine that defense counsel was ineffective under the Sixth Amendment in her discussions with petitioner. The exposure in sentencing before trial could reasonably be based on accountability for less than five kilos of cocaine, an amount less than that charged in the indictment. On the other hand, given the terms of the offer of the government, petitioner could have been held accountable for between five and fifteen kilos of cocaine, which are terms contained in the offer of September 20, 2002. (Docket No. 13–1 at 5). Clearly, the 100 kilogram amount came forth at trial and resulted in the presentence report determination which was objected to thoroughly all around. But more so, petitioner was aware of sentencing exposure from the date of initial appearance, a minimum of ten years and a maximum of life. It taxes credulity to believe that quantities of cocaine and sentencing guidelines were not adequately discussed between petitioner and this experienced defense attorney, indeed with the other two defendants. The three defendants in this case provided the court with numerous examples of their erudite writing, clear thinking, and knowledge of their rights as defendants in the American justice system notwithstanding the stress of detention pending trial.

Finally, while petitioner stresses that a counteroffer could be made, and he was not informed of that by defense counsel, certainly the invitation to make counterof-

fers was open in September, 2001 when the three defendants were willing to enter plea agreements providing for a maximum of 24 months (18 to 24), assuming a closed plea (plea cerrado). (Docket No. 11–1, 2). Petitioner stresses this point in his motion to expand the record. From the tenor of the last offer letter dated one year later, the generosity of the government had worn thin right before trial, and it is clear from the wording of the final offer that the government had drawn a line in the sand. Clearly, the only consideration of entering a guilty plea after letting the deadline pass was a straight plea, resulting in a minimum term of imprisonment of 120 months. Therefore this issue lacks merit.

## SIXTH GROUND: SENTENCE EXPOSURE

VI. Counsel rendered prejudicial deficient performance for affirmatively misadvising Campusano as to his sentencing exposure if he rejected the plea offer.

As charged, petitioner faced a minimum term of imprisonment of ten years and a maximum term of life imprisonment. He was notified of his sentencing exposure along with the other defendants at the time of the initial appearance held before me. Furthermore, the maximum term of imprisonment of ten years or more was also related to petitioner and the others at the end of their detention hearings when they failed to present evidence to rebut the presumption of 18 U.S.C. § 3142(e)(3)(A). (Crim. No. 01–520, Docket No. 15).

 Petitioner argues that he was given poor advice. Standing alone, an attorney's inaccurate prediction of his client's probable sentence does not satisfy the prejudice prong of the Strickland ineffective assistance test. *See United States v. LaBonte*, 70 F.3d 1396, 1413 (1st Cir.1995),

rev. on other grounds, 520 U.S. 751, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997), citing *Knight v. United States,* 37 F.3d at 774. Given the nature of the *pro se* correspondence in this case, it is clear that the three defendants were attempting to reach a degree uniformity in the sentences, notwithstanding co-defendant's prior convictions. (Docket No. 11–2 at 1). The knowledge of exposure can be readily imputed to petitioner, an obviously intelligent and articulate person. The three defendants were not only seeking uniformity, but also seeking a sentence of between 18 and 24 months. To argue that he was not aware of exposure whether he entered a guilty plea or proceeded to go to trial flies in the face of the *pro se* correspondence. This is particularly true in view of the awareness of co-defendant Rodriguez's criminal conviction record.

In any event, the final plea offer made shortly before trial would have entailed a recommendation to the sentencing court, and the court would not have accepted an agreement binding the court to sentence petitioner under any agreement[12]. *See Missouri v. Frye,* 566 U.S. ——, 132 S.Ct. at 1409.

### SEVENTH GROUND: RODRIGUEZ–ZAMOT'S CRIMINAL RECORD

VII. Counsel rendered prejudicial deficient performance prior to trial in failing to advise Campusano about his co-defendant Rodriguez–Zamot's prior drug convictions.

 Petitioner argues that had he known that Rodriguez–Zamot had a prior narcotics conviction, he would have accepted the plea offer since a jury would have associated him with a co-defendant. That is, he would not have gone to trial. His attorney told him that his chances of acquittal were good because there was no direct evidence linking him or Rodriguez–Zamot to the drug charges. (Docket No. 1 at 36). She explained Rodriguez–Zamot's expected testimony but neglected to inform him of the prior narcotics convictions which exposed Rodriguez–Zamot to life imprisonment if convicted. *See United States v. Pinillos,* 530 F.Supp.2d 411, 414 (D.P.R.2007). Because his attorney did not inform him of Rodriguez–Zamot's prior conviction, she arguably rendered ineffective assistance of counsel since he never would have gone to trial under the circumstances. (Docket No. 1 at 37).

The United States sharply replies that the jury was never informed of the information filed under 21 U.S.C. § 851 and that it was never submitted to the jury. It denies the inefficiency of counsel since the information pertained to a co-defendant and was not submitted to the jury.[13] Technically, the government is correct since the enhanced penalty information is relevant at sentencing and not at trial. However, as petitioner points out on reply, the government misses the point. Petitioner's argument is related to information provided to the jury which would have a spill-over effect on him, and concern of impeachment with a prior conviction using

---

**12.** Here I am referring to a Rule 11(c)(1)(C) agreement. See Fed. R. Crim, P. 11(c)(1)(C).

**13.** The United States states that the convictions were never presented to and/or considered by the jury. (Docket No. 7 at 13). This is inaccurate and wrong. Co-defendant Rodriguez–Zamot was cross-examined by Assis-

tant U.S. attorney Schulte and asked some details about his prior convictions and testified that there were two and the controlled substance involved was cocaine. (T. Tr. Oct. 23, 2002, pp. 179–81). Thus, the substance if not the form of the 21 U.S.C. § 851 Information was elicited and presented to the jury.

Rule 404(b)[14] evidence in a conspiracy case where petitioner and Rodriguez–Zamot, the focus of such evidence, are purported members.

Petitioner cites *Boria v. Keane*, 99 F.3d at 497 as convincing. That case should be narrowly construed to the facts contained therein which are not similar to those in this one although similar principles apply. *Boria* quotes *Von Moltke v. Gillies*, 332 U.S. 708, 721, 68 S.Ct. 316, 92 L.Ed. 309 (1948) in noting that counsel should "... offer his informed opinion as to what plea should be entered". Counsel clearly discussed the merits of the case and thought it was triable. Two other experienced attorneys thought similarly. Indeed, petitioner's limited participation does not prove such advice incorrect or inadequate, regardless of outcome. The strengths and weaknesses of the case were clearly discussed but the ultimate decision to choose to go to trial or enter a guilty plea rested with petitioner.

As to his lack of knowledge of the co-defendant's convictions, the letter of co-defendant Rodriguez–Zamot to his attorney reflects, as I mentioned in the preceding section, that the three defendants were attempting to reach a degree of uniformity in the sentencing agreements, regardless of co-defendant Rodriguez's prior convictions. (Docket No. 11–2). To inform the court that he was not aware of those prior convictions while negotiating a uniform and generous uniform plea taxes credulity and resembles Monday morning quarter-backing. *Cf. Castillo v. Matesanz*, 348 F.3d 1, 15–16 (1st Cir.2003). Thus, this argument lacks merit.

## EIGHTH GROUND: RECORDINGS OR TRANSCRIPTS

VIII. Campusano was denied his Sixth Amendment right to effective assistance of counsel because his counsel never provided him with the recording or transcripts of government cassette N–2.

▮▮▮▮ The record of this case reflects almost an incessant effort to obtain accurate tapes, copies of the same, and accurate transcripts of the same. (Crim. No. 01–520, Docket Nos. 119, 120, 123, 126, 138, 150 at 2). Petitioner also sought to listen to the original of the audiotapes and view the original videotapes. (Crim. No. 01–520, Docket No. 99). The government opposed the motion and the court the same. (Crim. No. 01–520, Docket Nos. 104, 108). Petitioner moved *in limine* and asked for a *Carbone*[15] hearing. (Crim. No. 01–520, Docket No. 138, dated October 1, 2002). The audiotape commonly referred to as N–2 was first determined to be inaudible. Notwithstanding the efforts of defense counsel and court orders, the prosecution presented the audiotapes at trial or shortly before, and the final transcript during the trial. (Tr. T. October 17, 2002, pp. 3–7). Any Sixth Amendment violation is nonexistent and the fact that counsel fails in the endeavors to acquire physical evidence from the government does not

---

**14.** Federal Rule of Evidence 404(b).

**15.** In *United States v. Carbone*, 798 F.2d 21, 24 (1st Cir.1986), the First Circuit explained that when the government seeks to present tape recordings as evidence, the government has the duty of laying the proper foundation to establish that "the tape recordings accurately reproduce the conversations that took place, *i.e.*, that they are accurate, authentic, and trustworthy." Once this is done, then the party challenging the admissibility of audio tapes has the burden of demonstrating that the recordings are inaccurate. *Id.* (citing *United States v. Rengifo*, 789 F.2d 975, 978–79 (1st Cir.1986)). The generally accepted rule is that when the challenge is to the audibility of the recordings, "the question is whether 'the inaudible parts are so substantial as to make the rest more misleading than helpful'...." *United States v. Carbone*, 798 F.2d at 24.

invite the conclusion that the Sixth Amendment was being transgressed. *Cf. Rivera–Perez v. United States,* 508 F.Supp.2d 150, 159–60 (D.P.R.2007). While the matter is couched in terms of counsel's fault in not sharing the recording or transcript, the error is more attributable to late production and, as other issues presented in this motion, could have been raised on direct appeal of the conviction. Indeed, the issue of the tapes was not raised by appellate counsel Golembe and the statements of co-defendant Pinillos clearly had an effect on the evidence against the three.

A significant bar on habeas corpus relief is imposed when a prisoner did not raise claims at trial or on direct review. In such cases, a court may hear those claims for the first time on habeas corpus review only if the petitioner has "cause" for having procedurally defaulted his claims, and if the petitioner suffered "actual prejudice" from the error of which he complains.

■■■ *United States v. Sampson,* 820 F.Supp.2d 202, 220 (D.Mass.2011), citing *Owens v. United States,* 483 F.3d at 56, also citing *Oakes v. United States,* 400 F.3d 92, 95 (1st Cir.2005) ("If a federal habeas petitioner challenges his conviction or sentence on a ground that he did not advance on direct appeal, his claim is deemed procedurally defaulted." To obtain collateral relief in relation to the transcripts and tapes, petitioner must show cause excusing his procedural default and actual prejudice resulting from the errors he is complaining about. *See United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). Ineffective assistance of counsel can clearly supply the cause element of the cause and prejudice standard. *See Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), cited in *Bucci v. United States,* 662 F.3d 18, 29 (1st Cir.2011). Yet, petitioner has failed to show that de-

fense counsel's representation was constitutionally ineffective under the *Strickland* standard, and has failed to argue ineffective assistance of appellate counsel in failing to pursue the issue of the accuracy of the recordings and transcripts on appeal.

## NINTH GROUND: OBSTRUCTION OF JUSTICE ENHANCEMENT

IX. Counsel rendered prejudicial deficient performance for failing to advise Campusano that if he testified at trial and was found guilty his sentence could be enhanced two points for obstruction of justice.

■■■ The obstruction of justice enhancement cannot be attributed to any deficiency in defense counsel's performance. Counsel argued against such enhancement in the objection to the presentence investigation report. Resentencing counsel addresses the matter at length and argued against any enhancement under U.S.S.G. § 3C.1.1 in the memorandum filed prior to resentencing. (Crim. No. 01–520, Docket No. 399 at 23–24). While the appellate court was not sure if the matter had been preserved, it was then put to rest on appeal. *United States v. Campusano,* 556 F.3d at 40–41. Because the trial tested the credibility of the witnesses and petitioner always professed his innocence, his testimony was consistent with his theory which was clearly shared with counsel. Witnesses are assumed to tell the truth. They take an oath to tell the truth. Petitioner said that he was in Puerto Rico sightseeing and knew nothing about the drug transaction. But just as acquittal might have been the natural consequence of his version of the meetings being believed by the jury, their disbelief triggered a finding of perjury by the district court, which made specific findings in relation to co-defendant Pinillos and petitioner. *See United States v. Leahy,* 668 F.3d 18, 23–24 (1st Cir.2012). As the appellate court not-

ed, "Material and deliberately false testimony at trial is a standard basis for the enhancement, U.S.S.G. § 3C1.1 & n. 4; *United States v. Dunnigan*, 507 U.S. 87, 92–94, 113 S.Ct. 1111, 122 L.Ed.2d 445 ... (1993), so long as the district court finds the specific elements of perjury." *United States v. Campusano*, 556 F.3d at 40–41, citing *United States v. Gobbi*, 471 F.3d 302, 314 (1st Cir.2006); *see United States v. Diaz*, 670 F.3d 332, 352 (1st Cir.2012). Again, a Sixth Amendment violation is missing. It is not ineffective assistance if petitioner is going to testify as to matters which are truthful and have defense counsel prepare him and then assume that petitioner is going to lie under oath. Otherwise, defense counsel would be suborning perjury. Consequently, consistent with the testimony, counsel argued and preserved the enhancement based upon obstruction of justice. The matter was addressed at the trial and appellate levels and there are no grounds to determine cause or prejudice. The argument therefore lacks merit.

## TENTH GROUND: ADVISE ON MERITORIOUS DEFENSE

X. Counsel rendered prejudicial deficient performance by advising Campusano that he had a meritorious defense, which led Campusano to reject the government's plea offer.

 This was a case which relied to a great extent on credibility. It was a dependable, triable case. Petitioner was aware of the offers made by the prosecution, which offers were communicated to him. The deadline for the last formal offer arrived and passed. Ineffective assistance of counsel might have been triggered if the plea offers were not communicated to petitioner but that did not happen.[16] To prove prejudice, in relation to a plea offer that was not accepted, petitioner must establish that there is a reasonable probability that, but for counsel's deficient advice, he would have pleaded guilty and would not have insisted on going to trial." *See Lafler v. Cooper*, 566 U.S. ——, 132 S.Ct. 1376, 1385, 182 L.Ed.2d 398 (2012). In hindsight, the advice would have been better if it were to have been given and accepted, especially after reviewing the sentences of the other co-defendants. However, petitioner argues that he relied on counsel's "meritorious defense" in rejecting the plea agreement. I explain.

Petitioner and the other two defendants sought a jury instruction that the jury could only convict a defendant of conspiracy if it finds that he conspired with at least one person who was not a government agent. In other words, a government agent does not count as a member of the conspiracy. *United States v. Nelson–Rodriguez*, 319 F.3d 12, 39 (1st Cir.2003); *United States v. Giry*, 818 F.2d 120, 126 (1st Cir.1987). Petitioner stresses the ease with which the court of appeals con-

---

**16.** In *Missouri v. Frye*, 566 U.S. ——, 132 S.Ct. at 1408, the Supreme Court held that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. If such a formal offer was not communicated to a defendant, and the offer thus lapsed, then "... defense counsel did not rendered the effective assistance that the Constitution requires." *Id.; see Lafler v. Cooper*, 566 U.S. ——, 132 S.Ct. 1376, 1390–91, 182 L.Ed.2d 398 (2012). "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 566 U.S. ——, 132 S.Ct. at 1409. The defendants must also demonstrate "... a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it ..." *Id.*

sidered the issue and placed an imprimatur on the district court's decision denying the defense the requested jury instruction.

The government argues that the issue is precluded because it was raised and decided on appeal. (Docket No. 7 at 19). The government quotes extensively from the court of appeals decision in pressing this point further. *See United States v. Pinillos–Prieto,* 419 F.3d at 72–73. Petitioner retorts that while the matter of the rejected jury instruction was resolved on appeal, the issue of effective assistance of counsel in presenting a defense totally lacking in merit, and upon which he relied in order to reject the offer of 48 months, was not so resolved. In fact, according to petitioner, the district court and appellate court rulings show ineffective assistance of counsel in seeking such an instruction. (Docket No. 10 at 29). Thus, the same argument raised here was not raised at the court of appeals.

■■■ Lawyers do not generally fabricate defenses and the defense was one of lack of knowledge of any drug deal and therefore lack of participation in any drug deal. The district court found the instruction incompatible with the theory of the case and the jury, when given alternatives, chose a theory which they considered stronger. As the evidence unfolds, attorneys consider different instructions to be proposed to the trial court for its consideration. That the instruction was ultimately rejected does not *a fortiori* lead to the conclusion that trial counsel, and for that matter the other two defense attorneys, supplied inadequate representation to the defendants. The meritorious defense in this case was a uniform presentation of innocence all around. The attempt to present an alternative and ultimately abortive theory to the jury was not the result of inadequate representation. *Cf. United States v. Austin,* 948 F.2d 783, 786 (1st Cir.1991).

## ELEVENTH GROUND: APPELLATE COUNSEL PERFORMANCE

### XI. Appellate counsel rendered prejudicial deficient performance on appeal.

■■■ Petitioner claims that appellate counsel incurred in inefficient assistance in failing to raise meritorious issues on appeal. Indeed, petitioner emphasizes that appellate counsel failed to raise the most critical issues which had been preserved by trial counsel during the district court proceedings. (Docket No. 10 at 31). These are the failure to raise before the court of appeals the district court's denial of trial counsel's request for the appointment of an investigator, particularly since trial counsel had stated that the denial seriously affected the defense. He also argues ineffective assistance in failing to appeal the denial of the motion to dismiss based upon perjured testimony before the grand jury which substantially influenced the decision to indict. (Docket No. 1 at 42, 44). And as ground XII, he also attacks the performance of appellate counsel in failing to raise the issue of knowledge as to the quantity of drugs. (Docket No. 1 at 45).

The United States argues that petitioner's need for an investigator was neither critical nor necessary for the defense. *See United States v. Manning,* 79 F.3d 212, 218–19 (1st Cir.1996). It also argues that the determination of which issues to argue on appeal is a prerogative of appellate counsel, citing *Smith v. Murray,* 477 U.S. 527, 535–36, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

Petitioner replies that the lack of investigator seriously affected the defense, as noted in the first motion filed by defense counsel. (Docket No. 10 at 31). He agrees in part with the government but stresses that appellate counsel chose not to raise a clearly stronger issue than some of

the weaker or non-meritorious issues that he did raise. *See Smith v. Robbins,* 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). He shows as example the issue that was raised which was the district court's refusal to give a jury instruction that the defendant cannot be found guilty if he conspired with a government agent. The district court denied the request on several grounds and the appellate court agreed, concluding that no error occurred. Petitioner stresses that the clearly stronger matters on appeal would have been appealing the rulings on the motion to dismiss based upon perjured testimony before the grand jury, and the motion for an investigator.

A claim of ineffective assistance of appellate counsel is measured under the Strickland standard. *Evitts v. Lucey,* 469 U.S. 387, 390–94, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Without the statement to the court that she could not adequately represent petitioner without the services of an investigator, there would probably have been less of a consideration of the motion by the court. The statement was essential and its import is turned around to make it the linchpin for a strong matter to appeal. Perjury at the grand jury level is also a serious matter but a review of the grand jury testimony, confusing at times at it is, and inaccurate as it may be, does not invite a mandatory ruling to dismiss the indictment based on either outrageous government misconduct or perjury. The issue of the denial of the motion to dismiss may be equal in importance to other issues raised on appeal but not clearly stronger. The denial of the request for an investigator is clearly not stronger than other issues raised on appeal, regardless of ultimate outcome.

Appellate counsel is not required to raise every non-frivolous claim, but rather select among them to maximize the likelihood of success on the merits. *Latti-*

*more v. Dubois,* 311 F.3d 46, 57 (1st Cir. 2002), citing *Smith v. Robbins,* 528 U.S. at 288, 120 S.Ct. 746, citing *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Considering the matter which were raised on the first appeal, such as the subject of the transaction (computers versus cocaine), lack of evidence to establish agreement, individual involvement, inflammatory testimony about the dangerous nature of drug organizations, and government agent as conspirator, I cannot reach the conclusion that appellate counsel did not choose wisely in selecting which matter to challenge. *See United States v. Mangual–Corchado,* 139 F.3d 34, 42 n. 17 (1st Cir.1998), citing *United States v. Rivera–Santiago,* 872 F.2d 1073, 1088 (1st Cir. 1989).

## TWELFTH GROUND: LACK OF KNOWLEDGE OF DRUG QUANTITY

XII. Counsel rendered ineffective assistance at sentencing for failing to argue CAMPUSANO's lack of knowledge as to the quantity of drugs.

Petitioner consistently denied knowledge of any cocaine negotiations, and at trial, he testified as to his innocent presence at the brief meetings. He notes the court of appeals was left uncertain how much petitioner was shown to have known and that they were not disposed to overturn a sentence on a ground raised neither at sentencing or on appeal. *United States v. Campusano,* 556 F.3d at 39–40. He stresses that he should be re-sentenced based only upon a one kilogram transaction. (Docket No. 1 at 45). Thus he charges his sentencing and appellate counsel, the same attorney, with ineffective assistance.

The United States responds to this argument by noting that the quantity of drugs was raised by all three defendants on direct appeal and that the matter was

settled on appeal. (Docket No. 7 at 22). Petitioner replies that the appellate court specifically noted that "... we are not disposed to overturn a sentence on a ground raised neither at sentencing nor on appeal." *Id.* at 40. The court continues, "Campusano does not claim on appeal that he was unfamiliar with the one hundred kilo figure." *Id.* In any event, the precise issue was not raised in the first appeal, but the matter of lack of knowledge of the amount of drugs involved or for which he would be held accountable could have been and was raised at the re-sentencing since the case had been remanded only for re-sentencing in accordance with *Booker.* Re-sentencing defense counsel Johnny Rivera–Gonzalez presented the sentencing court with a veritable onslaught of arguments in relation to sentencing factors in both his initial memorandum prior to re-sentencing, as well as a supplemental memorandum where he stresses the accountability attributable to petitioner in due fairness, citing *United States v. Colon–Solis,* 354 F.3d 101, 103 (1st Cir.2004), *United States v. Rodriguez–Gonzalez,* 433 F.3d 165, 169 (1st Cir.2005), and *United States v. Garcia–Carrasquillo,* 483 F.3d 124, 132–34 (1st Cir.2007). (Crim. No. 01–520, Docket Nos. 399, 408 at 2–3, 411–1 at 2, 413); *cf. Moreno–Espada v. United States,* 666 F.3d 60, 65–66 (1st Cir.2012). The knowledge issue was not appealed. However, as the court noted in *United States v. Campusano,* 556 F.3d at 39–40, "[a] defendant who conspires to transport for distribution a large quantity of drugs, but happens not to know the precise amount, pretty much takes his chances that the amount actually involved will be quite large." *United States v. De La Cruz,* 996 F.2d 1307, 1314 (1st Cir.1993). Contrary to petitioner's reading, the appellate court did not make it clear that the sentence would be vacated and he would have received a lesser sentence on remand if the matter would have been raised.

Rather, it stated that it was not disposed to overturn the conviction on a matter not raised.

Appellate counsel was clearly exhaustively thorough in his representation at re-sentencing. In order to satisfy the "prejudice" prong of *Strickland,* petitioner must establish that "but for his counsel's deficiency, there is a reasonable probability that he would have received a different sentence." *Peralta v. United States,* 597 F.3d 74, 79–80 (1st Cir.2010), citing *Porter v. McCollum,* 558 U.S. 30, 40, 130 S.Ct. 447, 453, 175 L.Ed.2d 398 (2009). The work performed by re-sentencing counsel belies such a conclusion. And on appeal, it is understandable that a degree of selectivity would decide which issues to keep. That is generally a professional judgment issue attributed to appellate counsel. In a case where petitioner's version of the facts had nothing to do with drug quantities, since he was in Puerto Rico sightseeing, whether knowledge of one kilo or 100 kilos, he would have knowledge of no kilos consistent with his theory. That the matter was not raised on appeal was understandable. Indeed, as an alternative, appellate counsel raised the entitlement to a two-level reduction for having a minor role in the offense, a matter which had been preserved and which might be considered more relevant to lack of knowledge of precisely what was going on during the existence of the conspiracy.

## THIRTEENTH GROUND: LACK OF RESOURCES

XIII. Counsel also rendered ineffective assistance at sentencing for failing to show that whatever their commitment, defendants lacked the resources to purchase the agreed upon amount and that the transaction could not have been accomplished.

█ Petitioner argues he lacked the resources to purchase the amount of drugs

for which he was held accountable. Assuming that trial counsel did not adequately address this sentencing factor, on re-sentencing, new defense counsel Johnny Rivera–Gonzalez comprehensively raised the issue in an 83–page re-sentencing memorandum filed on February 7, 2007, (Crim. No. 01–520, Docket No. 399 at 31–33). Petitioner himself, citing *United States v. Robinson*, 22 F.3d 195 (8th Cir. 1994), and making extensive reference to the trial record, raised the issue in a *pro se* letter motion filed on June 2, 2006. (Crim. No. 01–520, Docket No. 361). Appellate counsel on re-sentencing also raised the issue on appeal. The court noted: "In the new appeals from the sentence, both defendants argue that they never intended to buy one hundred kilos and that they lacked the financial capacity to do so." *United States v. Campusano*, 556 F.3d at 39. In the first appeal, the court also addressed the issue, referring to the factual weakness of the government's case in not recovering any amount of money of consequence, but that this was not a fatal weakness to the government's case. *United States v. Pinillos–Prieto*, 419 F.3d at 68. This invites the recollection that when a federal prisoner raises a claim that has been decided on direct review, he ordinarily cannot attempt to relitigate the claim in a section 2255 motion. *Withrow v. Williams*, 507 U.S. 680, 720–21, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993); *Berthoff v. United States*, 308 F.3d 124, 127–28 (1st Cir.2002); *Argencourt v. United States*, 78 F.3d at 16 n. 1; *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir.1994).

Petitioner's pointed reply on this issue concedes that the issue of lack of money was raised and decided, but the related issue is whether counsel was ineffective in meeting the burden of showing that the defendants lacked the financial capacity to purchase the quantity for which they were sentenced. (Docket No. 10 at 35). That the defense failed to prevail does not mean that counsel rendered ineffective assistance. *See e.g. United States v. Garcia*, 698 F.2d 31, 34–35 (1st Cir.1983). Even bringing forward the evidence proffered by petitioner, such as expert and character witnesses (Docket No. 1 at 11), the scenario does not trigger a Sixth Amendment violation. Finally, assuming cause on the part of trial counsel, the partial success of the first appellate counsel allowed for the possibility that the issue be considered during the resentencing proceedings and again on appeal. Therefore, the *Strickland* standard has not been violated.

## CONCLUSION

Petitioner has failed to establish that his attorneys in the criminal proceedings were necessarily constitutionally deficient in that the quality of their legal representations fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. at 686–87, 104 S.Ct. 2052; *United States v. Downs–Moses*, 329 F.3d 253, 265 (1st Cir.2003). But even assuming that petitioner were to have succeeded in showing deficiencies in their legal representation, then he must conclusively establish that said deficiencies operated a real prejudice against him in the criminal proceedings. To demonstrate such prejudice, petitioner must have shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See United States v. Rodriguez*, 675 F.3d 48, 56–57 (1st Cir.2012). The *Strickland* standard was clearly not transgressed by counsels' performances. Finally, in relation to some of the matters raised, collateral review of issues or claims which were already presented to and addressed by the court of appeals is barred, since a section 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal."

*McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir.1996) (quoting *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992)). Much of petitioner's argument was addressed or could have been addressed on direct appeal.

 Finally, "[u]nder *Strickland v. Washington*, . . . counsel is not incompetent merely because he may not be perfect. In real life, there is room not only for differences in judgment but even for mistakes, which are almost inevitable in a trial setting, so long as their quality or quantity do not mark out counsel as incompetent." *Arroyo v. United States*, 195 F.3d 54, 55 (1st Cir.1999). Petitioner has not satisfied the first prong of *Strickland*, and has not demonstrated that the wide range of reasonable professional assistance was substantially narrowed to the detriment of petitioner in his particular case. *See Knight v. Spencer*, 447 F.3d at 15. This was a hard fought case. The outcome could have been different. The result of the outcome cannot be placed at the feet of defense counsel.

Accordingly, it is my recommendation that the section 2255 motion be dismissed in its entirety without an evidentiary hearing.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within fourteen (14) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir.1992); *Paterson–Leitch Co.*

*v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir.1988); *Borden v. Sec'y Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir.1987); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega*, 678 F.2d 376, 378–79 (1st Cir.1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir.1980); *Velazquez v. Abbott Laboratories*, 901 F.Supp.2d 279, 288 (D.P.R.2012).

At San Juan, Puerto Rico, this 22nd day of August, 2013.